**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NORMAN BLAGMAN, individually and on behalf
of all others similarly situated,

               Plaintiff,

      v.

APPLE INC., AMAZON.COM, INC., GOOGLE
INC., MICROSOFT CORPORATION,
EMUSIC.COM INC., THE ORCHARD
ENTERPRISES, INC., ORCHARD ENTERPRISES
NY, INC., and John Does 1-10, persons or entities
whose identities are unknown to Plaintiff but who
have performed and participated in the unlawful acts
alleged herein,

               Defendants.

---

Case No. 12-CV-5453 (JGK)

<br>

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 3

I.     Defendants' Services ................................................................................................. 3

    A.     The iTunes Store ......................................................................................... 3

    B.     Amazon MP3 ............................................................................................... 3

    C.     Google Play ................................................................................................. 3

    D.     Zune ............................................................................................................ 3

    E.     eMusic ........................................................................................................ 4

    F.     The Orchard ................................................................................................ 4

II.     Plaintiff's Infringement Allegations ....................................................................... 4

ARGUMENT ...................................................................................................................... 6

I.     Plaintiff Fails to State a Claim of Copyright Infringement .................................... 7

    A.     Rule 8 Demands Specific Allegations Establishing A Plausible Claim to Relief .................................................................................................... 7

    B.     Plaintiff's Generalized and Conclusory Assertions of Industry-Wide Practices Fail To State a Plausible Claim to Relief ................................... 9

    C.     Plaintiff Makes No Factual Allegations of Willful Copyright Infringement ....... 14

II.     The Class Allegations Do Not State A Claim Or Establish Standing ............................ 15

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Wright,*
468 U.S. 737 (1984)...............................................................................17

*Amini Innovation Corp. v. KTY Int'l Mktg.,*
768 F. Supp. 2d 1049 (C.D. Cal. 2011) ...............................................15

*Angel Music, Inc. v. ABC Sports, Inc.,*
112 F.R.D. 70 (S.D.N.Y. 1986) ........................................................16, 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................... *passim*

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................... *passim*

*Clarex Ltd. v. Natixis Securities America LLC,*
No. 12 Civ. 0722(PAE), 2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012) ...................16

*Conley v. Gibson,*
355 U.S. 41 (1957)................................................................................7, 8

*Creech v. Holiday CVS, LLC,*
Civil Action No. 11–46–BAJ–DLD, 2012 WL 4483384 (M.D. La. Sept. 28, 2012)..............16

*Denney v. Deutsch Bank AG,*
443 F.3d 253 (2d Cir. 2006).......................................................17, 18, 19

*Hodczak v. Latrobe Specialty Steel Co.,*
No. 08-649, 2009 WL 911311 (W.D. Pa. Mar. 31, 2009) ........................16

*Island Software & Computer Serv., Inc., v. Microsoft Corp.,*
413 F.3d 257 (2d Cir. 2005).................................................................14

*Laine v. Pride,*
No. 09 CV 3057(HB), 2010 WL 199927 (S.D.N.Y. Jan. 19, 2010)....................8, 9

*Marvullo v. Gruner & Jahr,*
105 F. Supp. 2d 225 (S.D.N.Y. 2000)....................................................8

*N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.,*
No. 08 Civ. 5310(DAB), 2011 WL 1338195 (S.D.N.Y. Mar. 31, 2011) .................10

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*,
299 F. App'x 509 (6th Cir. 2008) ...........................................................8

*NFL v. PrimeTime 24 Joint Venture*,
131 F. Supp. 2d 458 (S.D.N.Y. 2001)....................................................14

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
538 F. Supp. 2d 662 (S.D.N.Y. 2008).....................................................10

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
244 F. Supp. 2d 289 (S.D.N.Y. 2003)......................................................17

*RBCI Holdings, Inc. v. Drinks Americas Holdings, Ltd.*,
No. 07 Civ. 2877(DC), 2008 WL 759339 (S.D.N.Y. March 20, 2008) ................................15

*Ritani, LLC v. Aghjayan*,
No. 11 Civ. 8928, 2012 WL 2979058 (S.D.N.Y. July 20, 2012) ...........................8

*Sanders v. Grenadier Realty, Inc.*,
367 F. App'x 173 (2d Cir. 2010) ...........................................................9

*Vapac Music Pub., Inc. v. Tuff 'N' Rumble Management*,
No. 99 CIV 10656 (JGK), 2000 U.S. Dist. LEXIS 10027 (S.D.N.Y. July 19, 2000) ..............8

## STATUTES, REGULATIONS AND RULES

17 U.S.C. § 115.................................................................... 5, 12

37 C.F.R. 201.18.....................................................................12

37 C.F.R. 201.18(a)(7).................................................................13

37 C.F.R. 201.18(f)(1).................................................................13

37 C.F.R. 201.18(f)(2).................................................................13

Federal Rule of Civil Procedure 12(b)(6) ...............................1, 2, 15, 16

Federal Rule of Civil Procedure 12(b)(1) ...................................15, 16

Federal Rule of Civil Procedure 12(f) .........................................2, 15

Federal Rule of Civil Procedure 23 ...........................................2, 15

**OTHER AUTHORITIES**

7 AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, FEDERAL PRACTICE AND
PROCEDURE § 1785.1 (3d ed. 2005) ......................................................................................17

Robin J. Effron, *The Plaintiff Neutrality Principle: Pleading Complex Litigation in the
Era of Twombly and Iqbal*, 51 Wm. & Mary L. Rev. 1997 (2010) .........................................16

Defendants Apple Inc., Amazon.com, Inc., Google Inc., Microsoft Corporation, eMusic.com Inc., The Orchard Enterprises, Inc. and Orchard Enterprises NY, Inc. (collectively, "Defendants") submit this Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's First Amended Class Action Complaint Under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

The First Amended Class Action Complaint (hereafter, the "Amended Complaint") alleges a broad scheme in the digital music industry of distributing and selling music in online retail stores without securing the necessary licenses from copyright owners—but does not allege with the requisite specificity that any individual defendant actually infringed any copyright interests. Plaintiff's Amended Complaint is nothing more than an overview of licensing practices in the music industry peppered with sparse, conclusory allegations of copyright infringement. Without the necessary factual support, Plaintiff's infringement allegations do not raise his own copyright infringement claims above the speculative level and his Amended Complaint must be dismissed.

Plaintiff filed his original Class Action Complaint on July 13, 2012, in which he asserted a claim of willful copyright infringement against Defendants, on behalf of "[a]ll persons or entities who own a copyrighted musical composition or a portion thereof which has been reproduced or distributed by Defendants without a license or authorization from the owner of the copyrighted musical composition and without a lawful mechanical, or 'DPD,' license." (Dkt. #1 at 2.) Plaintiff alleged that the Defendants were engaged in "massive and systematic infringement" by "willfully ignor[ing] their statutory obligations to obtain a license before reproducing and distributing copyrighted musical compositions." (*Id.* at 13.) By letter dated September 26, 2012, Defendants advised Plaintiff and the Court of their intention to move to

dismiss the Complaint under Rule 12(b)(6) for failure to state a claim and to strike the class allegations under Rule 12(f) for failure to propose an ascertainable, certifiable class under Rule 23. (*See* Dkt. #17.) At an October 2, 2012 conference with the Court, Plaintiff conceded that the proposed class was an improper "fail safe" class (since membership in the class depended on the adjudication of the merits of the claim), and elected to amend the Complaint in order to address this issue as well as the other pleading defects identified in Defendants' September 26 letter— including the failure to allege any specific facts demonstrating the infringement of his copyrighted works and the failure to allege any facts at all regarding willfulness. (*See id.*) Plaintiff's Amended Complaint does not cure these defects.

The class claim is even worse off, as Plaintiff does not even *attempt to allege* that all of the putative class members own copyrights that have been infringed. Indeed, by Plaintiff's own assertions, most of the recordings of compositions owned by the putative class members are lawfully distributed pursuant to license. Thus, even assuming, *arguendo*, that Plaintiff is found to have stated a claim for three compositions in which he claims to own an interest, the same cannot be said for the putative class members. Moreover, the class clearly lacks standing to pursue any such claim. Defendants therefore seek dismissal of Plaintiff's copyright infringement claim under Federal Rule of Civil Procedure 12(b)(6) for failure to meet the pleading standards articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and/or for failure to establish that the putative class members have standing with respect to injuries suffered as a result of Defendants' actions.

## FACTUAL BACKGROUND

### I.    Defendants' Services

We will forgo any description of the myriad products and services offered by the Defendants and limit ourselves here to the various partial descriptions provided in the Amended Complaint.

### A.    The iTunes Store

"The iTunes Store is a software-based online digital media store owned by Apple that opened in April 2003." (Am. Compl. ¶ 87.) According to Plaintiff, the iTunes Store contains over 28 million tracks available for sale. (*Id.* ¶ 89.)

### B.    Amazon MP3

"Amazon MP3 is a digital music store owned and operated by Amazon that launched in beta in or around September 2007." (Am. Compl. ¶ 95.) "According to its website, Amazon MP3's catalog now contains over 20 million songs." (*Id.*) "Amazon MP3 allows its customers to purchase music from its catalog by digital download, burning a CD, or by storage in the Amazon Cloud." (*Id.*)

### C.    Google Play

Google Play, operated by Google Inc., includes a digital music store. (Am. Compl. ¶ 96.) According to Plaintiff, "there are over 13 million" works available on Google Play. (*Id.*)

### D.    Zune

"Microsoft has owned and operated several online digital music services, including Zune and X-box Music." (Am. Compl. ¶ 17.) "There are over 14 million songs available on Zune and Microsoft allows its customers to purchase music from its catalog by digital download or by storage online." (*Id.* ¶ 97.) "Microsoft also offers the Zune Music Pass, a music subscription

service, which allows subscribers to download an unlimited number of songs for as long as their subscription is active." (*Id.*)

### E. eMusic

"eMusic.com is a digital music store owned and operated by EMusic that was originally launched in 1998." (Am. Compl. ¶ 98.) "There are over 13 million songs available on EMusic which customers may purchase by digital download or through a monthly subscription service that allows its users to download a fixed amount of tracks to their MP3 players per month." (*Id.*)

### F. The Orchard

The "Orchard is an independent music and video distribution, marketing, and sales company that works with independent artists, labels, and other content providers to distribute musical content to online digital music stores such as iTunes, Amazon MP3, Google Play, Zune, and EMusic." (Am. Compl. ¶ 105.)

## II. Plaintiff's Infringement Allegations

In his Amended Complaint, Plaintiff asserts a vague and unsubstantiated scheme of infringement in the music industry, whereby Defendants allegedly infringed his copyright interest in three musical compositions: *The Prowl*, *Jazz Is His Old Lady and My Old Man*, and *It'll Never Be Over For Me* (collectively, the "Subject Compositions"). (Am. Compl. ¶ 23.) To reach this legal conclusion, Plaintiff sets forth in broad terms his understanding of the general licensing structure of the digital music industry. (*Id.* ¶¶ 59-77.) In sum, every recorded musical performance is the subject of two separate copyrights: (1) the musical composition, which is comprised of the underlying musical arrangement and accompanying lyrics; and (2) the sound recording of the performance of the musical composition. (*Id.* ¶ 59.) Parties wishing to obtain authorization to distribute or sell a sound recording containing a copyrighted musical

composition must obtain a license from an owner or co-owner of the copyright in the underlying composition (or from another party authorized to license the composition). (*Id.* ¶¶ 59-60.)

There are several ways owners of the copyright in the underlying composition license their copyrighted works, including: (1) a controlled composition license; (2) a negotiated mechanical license; or (3) a compulsory mechanical license. Section 115 of the U.S. Copyright Act provides a compulsory mechanical license to anyone wishing to distribute a recording of a musical composition, provided that the licensee provides notice and payment of a statutory royalty to the copyright owner. 17 U.S.C. § 115. (Am. Compl. ¶¶ 68-71.)

Plaintiff asserts that Apple Inc., Amazon.com, Inc., Google Inc., Microsoft Corporation, and eMusic.com Inc. (referred to by Plaintiff as the "Retailer Defendants") all operate successful online music stores that allow users to download content for a fee. (*Id.* ¶¶ 82-98.) According to Plaintiff, these Retailer Defendants receive content from music aggregators who, in turn, receive this content directly from record labels and individual recording artists. (*Id.* ¶ 78.) Plaintiff asserts that, in order to provide this music for sale by the Retailer Defendants, the aggregators are required to obtain a license from the owners of the musical compositions in the manner detailed above and that the Retailer Defendants are, likewise, required to obtain licenses or ensure that the proper mechanical licenses authorizing sale were secured in order to sell this content to users in their respective online stores. (*Id.* ¶¶ 1, 3-4, 80.)

According to Plaintiff, the Retailer Defendants generally fail to secure licenses before reproducing and distributing copyrighted musical compositions and, therefore, engage in infringing activity. (*Id.* ¶¶ 7, 50.) Plaintiff asserts that the aggregators are distributing content to the Retailer Defendants without necessarily having secured the required licenses, and that the Retailer Defendants "accept virtually every recording delivered to them, without qualification,

by digital music aggregators (including The Orchard) who acquire digital distribution rights from record labels and individual music artists." (*Id.* ¶¶ 83, 100.) Based on these generalized assumptions, Plaintiff concludes that Defendants "have engaged in a massive and systematic course of infringing conduct" and that "the infringement is willful." (*Id.* ¶¶ 7, 50.)

Plaintiff brings his copyright action on behalf of "[a]ll persons or entities who own all or part of one or more registered copyrighted musical compositions that have been reproduced, distributed, or sold by Defendants." (*Id.* ¶ 52.) Plaintiff states no facts relating to the alleged infringement of any compositions other than his Subject Compositions. Regarding all other compositions, Plaintiff merely asserts that "[i]n addition to infringing Plaintiff's copyrights in the Subject Compositions, the Defendants have also willfully infringed at least thousands of other copyrighted compositions." (*Id.* ¶ 51.) As is discussed below, neither Plaintiff's individual infringement claim nor the class claim can survive a 12(b)(6) motion and, accordingly, the Amended Complaint must be dismissed.

## ARGUMENT

As *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), make clear, Plaintiff is required to plead specific facts that state a plausible claim to relief, once conclusions and naked assertions devoid of factual enhancement have been disregarded. Here, Plaintiff's Amended Complaint—while discursive on the general topic of the digital music industry—is sorely lacking in specific factual allegations that raise his claim to relief based on copyright infringement by Defendants above the speculative level. Even after being put on notice of the type of specific allegations that are required to satisfy Rule 8 (by way of Defendants' pre-motion letter concerning the original Complaint), Plaintiff still fails to provide even the basic factual details necessary to support his claim. The Amended Complaint fails on this basis alone. Additionally, as explained below, deficiencies in Plaintiff's class

allegations provide independent grounds for dismissal: the Amended Complaint is utterly devoid of allegations that would support a class infringement claim, and, in any event, the class lacks standing to bring such a claim. Accordingly, the Amended Complaint should be dismissed.

## I.    Plaintiff Fails to State a Claim of Copyright Infringement

### A.    Rule 8 Demands Specific Allegations Establishing a Plausible Claim to Relief

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court significantly clarified the pleading standard under Rule 8 of the Federal Rules of Civil Procedure. The Court conclusively retired the long "questioned, criticized, and explained away" language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561 (citing *Conley*, 355 U.S. at 45-46). Instead, the Court explained that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

To meet this standard, a complaint's factual allegations must permit the Court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct" and to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678-79 (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In assessing the sufficiency of a claim, courts are to "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them. *Id.* at

7

679. Next, when the court is left with the "nub" of the complaint—well-pled, non-conclusory factual allegations—the court should determine whether the remaining allegations state "a plausible claim for relief." *Id.* at 679-80.

These principles apply with particular force to copyright infringement claims, because "[c]opyright infringement, like anti-trust actions, lends itself readily to abusive litigation . . . . Therefore, greater particularity in pleading, through showing 'plausible grounds,' is required." *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008). As a result, this Court routinely dismisses copyright claims that fail to satisfy the pleading standards articulated in *Twombly* and *Iqbal*. *See, e.g., Ritani, LLC v. Aghjayan*, No. 11 Civ. 8928, 2012 WL 2979058, at *12-13 (S.D.N.Y. July 20, 2012) (dismissing amended complaint for failure to plead copyright infringement with the specificity required by *Iqbal* and *Twombly*); *Laine v. Pride*, No. 09 CV 3057(HB), 2010 WL 199927, at *6 (S.D.N.Y. Jan. 19, 2010) (dismissing copyright infringement claims for failure to "adequately allege an infringing act" in the wake of *Iqbal* and *Twombly*).

Indeed, this Court has not hesitated to dismiss "broad, sweeping allegations" of copyright infringement as failing to comply with Rule 8 even under the old *Conley* "no set of facts" standard. *See, e.g., Vapac Music Pub., Inc. v. Tuff 'N' Rumble Mgmt.*, No. 99 CIV 10656 (JGK), 2000 U.S. Dist. LEXIS 10027, at *18 (S.D.N.Y. July 19, 2000) (Koeltl, J.) (dismissing copyright infringement claim for failing to satisfy minimum pleading requirements where "[a]lthough the Complaint generally alleges that the reproductions of 'Shake a Tail Feather' 'were authorized by defendants for sale in various territories of the world outside the United States in direct violation of plaintiff's international copyrights,' there are no allegations of specific acts of infringement with respect to specific foreign copyrights owned by the plaintiffs"); *Marvullo v. Gruner & Jahr*,

105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000) ("[P]laintiff's unadorned allegation . . . that defendants have published the McNeely photograph 'beyond the scope . . . of the limited license,' absent any factual support, merely states a legal conclusion insufficient to withstand a motion to dismiss.") (quotations omitted).

### B. Plaintiff's Generalized and Conclusory Assertions of Industry-Wide Practices Fail To State a Plausible Claim to Relief

In order to properly state a claim for copyright infringement, a claimant must allege: (1) which specific works are the subject of the claim, (2) that the plaintiff owns the copyrights in these works, (3) that the copyrights in question have been registered in compliance with the Copyright Act, and (4) by what acts and during what time the defendant infringed the copyright. *Laine*, 2010 WL 199927, at *6. These required elements have not been adequately alleged for the vast universe of compositions allegedly sued upon herein.

Plaintiff attempts to indict the entire digital music industry for "massive and systematic infringement," with broad accusations that "[n]one of the Defendants [ ] are meeting their statutory obligation to obtain mechanical licenses for all of the digital musical compositions they reproduce, distribute, and sell online." (Am. Compl. ¶ 5.) Plaintiff further accuses Defendants of "willfully ignor[ing] their statutory obligations to obtain a license before reproducing and distributing copyrighted musical compositions." (*Id.* ¶ 7.) This generalized and conclusory assertion that the largest companies in the digital music industry are simply ignoring their statutory obligations and committing "systematic" infringement is completely implausible. Accordingly, Plaintiff's allegations concerning a purported industry-wide failure to comply with federal law fail to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). *See, e.g., Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 (2d Cir. 2010) (affirming dismissal of claim where, although complaint alleged facts

"consistent with" the claim, it nevertheless "stops short of the line between possibility and plausibility of entitlement to relief"); *N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*, No. 08 Civ. 5310(DAB), 2011 WL 1338195, at *10 (S.D.N.Y. Mar. 31, 2011) (dismissing claims of securities violations based on conclusory allegations that defendant "systematically failed to comply with its underwriting guidelines," including having made "no attempt to confirm the standards used by mortgage brokers," and being "not nearly as thorough in obtaining and verifying documentation as [the guidelines] imply," citing "broad investigations concerning the subprime mortgage crisis, that included many of the Defendants here").

Nor do Plaintiff's allegations regarding The Orchard support his claim. Plaintiff asserts that "[The] Orchard admittedly does not obtain the required mechanical licenses for all the music it distributes," citing The Orchard's 10-K filing for 2009, which states: "We could be liable for unpaid mechanical royalty obligations . . . *if* our label clients fail to license and/or pay mechanical copyright royalties owed or *if* where contractually obligated to do so, we fail to properly license and/or pay mechanical royalties . . . ." (Am. Compl. ¶ 110 [emphasis added].) All this SEC filing tells investors is that *if* The Orchard or its record-label clients breach the contracts they have in place, it *could possibly* be liable for copyright infringement—and that such liability could cause financial impact to the company. This only imagines a "conceivable" act of infringement, not a "plausible" act. *Twombly*, 550 U.S. at 570. The purpose of risk disclosures in 10-K filings under the Securities Act is "to protect investors by promoting full disclosure of information thought necessary to informed investment decisions." *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 664 (S.D.N.Y. 2008) (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953)). Compliance with mandatory disclosure of conceivable risks is not an admission of liability or even a prediction of events that are likely to

occur. *See id.* ("The securities laws do not require clairvoyance in the preparation of offering documents."). Permitting a plaintiff in an action wholly unrelated to securities offerings to distort this type of disclosure into a concession of liability discourages candor in public disclosures and turns the purpose of the regulation on its head.[1] Plaintiff's efforts to do so here should not be countenanced.

Further, by its reference to the contractual obligations of The Orchard's label clients to secure and to pay for mechanical royalties, the quoted 10-K language directly refutes a key predicate for Plaintiff's claims—*i.e.*, that "the administration and licensing functions traditionally performed by the major labels has fallen to the digital music retailers and aggregators such as the Defendants." (Am. Compl. ¶ 80.) As the quoted language regarding the responsibility of the record labels confirms, aggregators (and retailers) continue to rely upon record labels to secure requisite licenses. And this makes sense, because, as *Plaintiff himself explains*, it is the record labels that *make and reproduce recordings* of the compositions, make them part of albums, and provide them to aggregators. (*Id.* ¶ 46.) Plaintiff alleges that a handful of record labels and aggregators–namely, Master Classics Records, Classic Records, One Media Publishing, THS Records, Angeli Records, East Side Records, Andys/Jahmel Music, Bringings Music, P.E.R. Records, Synergy Records, Believe Digital, Entertainment One Distribution, Zojak World Music, and IRIS–did not obtain the requisite licenses for Defendants to distribute or sell the recordings embodying the Subject Compositions. And yet Plaintiff named none of these entities as defendants in this action. Again, the Amended Complaint fails to identify what Defendants themselves (as opposed to the labels) should have done, but failed to do, to secure

---

[1] Moreover, at least with respect to Google Inc., this 10-K filing was made two years before the Google Play service launched (*see* Am. Compl. ¶ 96), making any risk disclosure therein both meaningless and irrelevant.

the required mechanical licenses associated with the reproduction and distribution of the Subject Compositions.

At most, and limited to a universe of only the three Subject Compositions, Plaintiff alleges that his copyrights in the Subject Compositions were infringed "as set forth in Exhibit D" and "without anyone obtaining a license from [the copyright owners] or serving [the copyright owners] with a statutory notice for a compulsory license under 17 U.S.C. § 115." (Am. Compl. ¶¶ 43-45.) Even as to these three Subject Compositions, these allegations do not set forth facts that would support Plaintiff's conclusory allegations of infringement. The so-called "Infringement Chart" set forth in Exhibit D merely lists the record labels and aggregators who provided the Subject Compositions to the Retailers. Nothing in the chart is inconsistent with the lawful reproduction, distribution, and/or sale of the recordings embodying the Subject Compositions by the Retailer Defendants.

Similarly, the assertions as to the three Subject Compositions that a "license was not obtained" and that "statutory notice under 17 U.S.C. § 115 was not served" are legal conclusions, not factual allegations that support a properly stated claim of copyright infringement. For example, 37 C.F.R. 201.18, which details the procedure for serving notice of intent to distribute for purposes of Section 115, sets forth thirteen requirements for the form and content of the notice. Plaintiff does not allege facts relating to any of these statutory requirements. The regulation also provides that:

> [A] copyright owner or an agent of a copyright owner with authority to receive Notices of Intention may make public a written policy that it will accept Notices of Intention to make and distribute phonorecords pursuant to 17 U.S.C. 115 which include less than all of the information required by this section, in a form different than required by this section, or delivered by means (including electronic transmission) other than those required by this section. Any Notice provided in accordance with such policy

shall not be rendered invalid for failing to comply with the specific requirements of this section.

37 C.F.R. 201.18(a)(7). Plaintiff does not allege that no such written policies were ever made public. The regulation further provides that "the Notice may be served on such owner by mail sent to, or by reputable courier service at, the last address for such owner shown by the records of the Office." 37 C.F.R. 201.18(f)(1). Plaintiff alleges that he is a resident of New Jersey, but does not provide his address. (Am. Compl. ¶ 12.) The copyright registrations for the Subject Compositions each list a different address, two of which are in New Jersey and one of which is in New York.[2] Plaintiff provides no allegations regarding whether his correct, current address is or has been available or whether any type of notice was received at any of these addresses or alternatively sent to the Copyright Office, per 37 C.F.R. 201.18(f)(2). Instead, Plaintiff "offers labels and conclusions" regarding "statutory notice" and expects the Court to guess at the underlying details. Such an approach does not satisfy Rule 8. *Iqbal*, 556 U.S. at 678.

In sum, certainly as to any compositions owned by Plaintiff (and other members of his putative class) *other than* the three Subject Compositions, Plaintiff's claims must be dismissed. Plaintiff's allegations relating to that universe of compositions are blatantly deficient under the requirements of Rule 8, *Iqbal*, *Twombly*, and the other authorities cited above. Even as to the three Subject Compositions, Defendants submit that these authorities require more than the conclusory allegations of unlicensed use of these three works as set forth in paragraphs 42-50 of the Amended Complaint.

---

[2] The renewal registration for *The Prowl* lists 244 Broad Ave., Leonia, New Jersey. (Am. Compl. Ex. A.) The renewal registration for *Jazz Is His Old Lady And My Old Man* lists 144 Broad Ave., Leonia, New Jersey. (Am. Compl. Ex. B.) And the renewal registration for *It'll Never Be Over For Me* lists Bourne Co., 5 W. 37th Street, New York, New York. (Am. Compl. Ex. C.)

## C. Plaintiff Makes No Factual Allegations of Willful Copyright Infringement

Plaintiff also asserts that Defendants' infringement is "willful, intentional, purposeful, and [in] willful disregard of the rights of Plaintiff and the Class." (Am. Compl. ¶ 117.) Once again, Plaintiff fails to allege any facts that support this legal conclusion. Willful copyright infringement can only be established where the plaintiff shows (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights. *Island Software & Computer Serv., Inc., v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005). *See also NFL v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 475 (S.D.N.Y. 2001) ("'[W]illfullness' in the context of statutory damages for copyright infringement means that the infringer either had actual knowledge that it was infringing the plaintiffs' copyrights or else acted in *reckless disregard of the high probability* that it was infringing plaintiffs' copyrights.") (emphasis added).

Plaintiff asserts in conclusory fashion that "the infringement is willful in that: (a) Defendants were and are actually aware of the infringing activity, or (b) the Defendants' actions were the result of reckless disregard for, or willful blindness to Plaintiff's rights." (Am. Compl. ¶ 50.) But nowhere in the Amended Complaint does Plaintiff articulate *either* of these theories with the support of factual allegations. There are no allegations whatsoever that Defendants had or have actual knowledge that Plaintiff's compositions are being distributed without a license— nor could Plaintiff make such an allegation. Nor are there any specific factual allegations in support of the conclusion that Defendants acted with "willful blindness" or in "reckless disregard" of Plaintiff's rights. At most, Plaintiff speculates that "the Retailer Defendants accept virtually every recording delivered to them, without qualification, by digital aggregators." (Am. Compl. ¶ 83.) But Plaintiff offers no specific allegations or even rationale as to why accepting content from digital aggregators pursuant to contract would constitute "reckless disregard of the

14

high probability" of infringement–particularly since, pursuant to the industry practices Plaintiff describes, at least most of the songs provided by aggregators and labels are properly licensed.

The theoretical leap Plaintiff asks the Court to make is far too great; it is clear that even under the most deferential reading of the Amended Complaint, Plaintiff does not come close to alleging facts that could support a claim of willful infringement. *See Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1055 (C.D. Cal. 2011) (plaintiff failed to state a claim of willful copyright infringement based on allegation that defendant had access to plaintiff's furniture designs, because that allegation, "while necessary to support a finding of non-willful copyright infringement, is insufficient to satisfy the heightened standard of knowledge or reckless disregard for willful copyright infringement."). In sum, Plaintiff's claim of willful copyright infringement fails and should be dismissed.

## II.  The Class Allegations Do Not State A Claim Or Establish Standing

Even assuming that Plaintiff could state a claim for infringement of the Subject Compositions (and he cannot), Plaintiff's Amended Complaint should be dismissed based on Plaintiff's complete failure to allege facts supporting infringement of compositions owned by all of the putative class members. Defendants have filed a concurrent motion under Rule 12(f) to strike the class allegations based on a failure to meet the minimum class certification requirements of Rule 23 (a failure that is apparent from the face of the Amended Complaint). *See* Defendants' Memorandum of Law in Support of Their Motion To Strike Class Allegations, dated October 26, 2012. But the deficiencies of the class allegations also provide an independent basis to dismiss this action under Rule 12(b), because the class allegations fail to state a claim upon which relief can be granted, and fail to allege a cognizable injury to establish standing.[3]

---

[3] Lack of standing may be raised both on Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction and on Rule 12(b)(6) motions for failure to state a claim. *RBCI Holdings, Inc.*
(cont'd)

In determining whether claims survive a motion to dismiss in class action suits, courts have separately evaluated the adequacy of the claims of named plaintiffs and the putative class members. *See, e.g., Creech v. Holiday CVS, LLC*, Civil Action No. 11–46–BAJ–DLD, 2012 WL 4483384, at *3 (M.D. La. Sept. 28, 2012) (holding that although the individual named plaintiff had stated a claim, the class allegations "lack[ed] the level of factual specificity required to survive a Rule 12(b)(6) motion"); *Hodczak v. Latrobe Specialty Steel Co.*, No. 08-649, 2009 WL 911311, at *1 (W.D. Pa. Mar. 31, 2009) (same); *see also* Robin J. Effron, *The Plaintiff Neutrality Principle: Pleading Complex Litigation in the Era of Twombly and Iqbal*, 51 Wm. & Mary L. Rev. 1997, 2053 (2010) ("Judges . . . have seized upon Twombly and Iqbal to squelch class actions on the ground that the plaintiff speculated as to the facts of *other class members*.") (emphasis added).

It is clear that the class allegations in Plaintiff's Amended Complaint are based on pure speculation and lack the requisite level of factual specificity. The *only* allegation in the Amended Complaint regarding copyright infringement of the putative class members is a generalized and conclusory assertion that "Defendants have [ ] willfully infringed at least thousands of other copyrighted compositions." (Am. Compl. ¶ 51.) This legal conclusion is

---

*v. Drinks Americas Holdings, Ltd.*, No. 07 Civ. 2877(DC), 2008 WL 759339, at *3 (S.D.N.Y. March 20, 2008) (citing *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 & n.2 (2d Cir. 1993)). Standing has also been considered on a Rule 12(c) motion. *See Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70 (S.D.N.Y. 1986) (dismissing class action complaint pursuant to Rule 12(c) based on lack of requisite "injury in fact" to satisfy Article III case or controversy requirement). Here, Defendants move for dismissal of the class members' copyright infringement based on failure to allege injury–and thus failure to state a claim or establish standing–under Rule 12(b)(6) or, in the alternative, under Rule 12(b)(1). *See Clarex Ltd. v. Natixis Sec. America LLC*, No. 12 Civ. 0722(PAE), 2012 WL 4849146, at *9 (S.D.N.Y. Oct. 12, 2012) (observing that because typical dismissal under Rule 12(b)(6) is an adjudication on the merits with preclusive effect, considering a challenge to lack of standing under 12(b)(1) avoids the need to fashion a modified approach to a Rule 12(b)(6) motion concerning standing; presumably this need is less critical where a Rule 12(b)(6) dismissal does not have preclusive effect).

substantiated by no factual detail whatsoever. Moreover, Plaintiff's class definition sweeps in "[a]ll persons or entities who own all or part of one or more registered copyrighted musical compositions that have been reproduced, distributed, or sold by Defendants." (*Id.* ¶ 52). By Plaintiff's own estimation, this group could include the owners or co-owners of the compositions embedded in more than 28 million tracks, most of whom have likely *not* had their copyrights infringed because their compositions are licensed or otherwise authorized. (*See id.* ¶¶ 62-68, 88.)

Moreover, by purporting to represent an extremely large number of "persons or entities" who have not suffered any injury at all–let alone an injury caused by some improper action of Defendants–Plaintiff asserts a claim on behalf of a class of plaintiffs who do not have standing to pursue that claim against Defendants. Standing requires allegation of an "injury in fact," which is "distinct and palpable," "fairly traceable to the challenged action," and "likely redressable by a favorable decision." *Denney v. Deutsch Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (citations omitted). The injury may not be "abstract or conjectural or hypothetical." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citations and quotations omitted). "The filing of suit as a class action does not relax this jurisdictional requirement." *Denney*, 443 F.3d at 263 (citing *Allen*, 468 U.S. at 750). *See also Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 334 (S.D.N.Y. 2003) (noting that "each member of the class must have standing with respect to injuries suffered as a result of defendants' actions"); 7AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1785.1, at 390 (3d ed. 2005) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention."). "The

class must therefore be defined in such a way that anyone within it would have standing." *Denney*, 443 F.3d at 264.

Here, Plaintiff has obviously not defined the class "in such a way that anyone within it would have standing." *Id.* Plaintiff's class definition sweeps in "[a]ll persons or entities who own all or part of one or more registered copyrighted musical compositions that have been reproduced, distributed, or sold by Defendants." (Am. Compl. ¶ 52.) To be clear, this definition includes *every single registered copyright owner or co-owner whose composition(s) are embedded in tracks distributed* on *every Defendant's retail site*—at least most, if not all, of whom received royalties based on sales through the digital retail sites, thus being benefitted rather than harmed by Defendants' services. (*See id.* ¶¶ 62-68, 88.) Nowhere in the Amended Complaint does Plaintiff allege that all of the putative class members have suffered harm as a result of their compositions having been reproduced, distributed, or sold by Defendants, and it is clear that Plaintiff could not make such an allegation. The absence of any "injury in fact" suffered by all of the class members is fatal to class members' standing here, and Plaintiff's *single* class allegation of copyright infringement—a generalized and conclusory assertion that "Defendants have [ ] willfully infringed at least thousands of other copyrighted compositions" (*id.* ¶ 51)—does not cure the deficiency in standing.[4] *See Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 75 (S.D.N.Y. 1986) (rejecting plaintiff copyright owner's argument that "the defendant's industry-wide policy of circumventing a uniform statutory scheme for copyright licensing create[d] an 'injury in fact' to all members of the plaintiff class" and holding that

---

[4] Nor is this deficiency cured by Plaintiff's confounding attempt to demonstrate typicality among the proposed class members by concluding that "Defendants' illegal practices have targeted and affected *all* members of the Class in a similar manner, *i.e.*, they have *all* sustained damages arising out of Defendants' willful conduct in violation of the Copyright Act." (Am. Compl. ¶ 55) (emphasis added). It is clear from Plaintiff's own allegations concerning industry practices (not to mention common sense) that this statement is simply false.

consequently, plaintiff lacked standing to bring copyright infringement suit). The lack of standing is especially apparent here because, as explained more thoroughly in Defendants' Memorandum in Support of its Motion to Strike the Class Allegations, the proposed class is sprawling and complex, with few to no commonalities among class members–including with respect to injury suffered. *See Denney*, 443 F.3d at 264 (citing *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming the denial of a plaintiff class because the definition of the class was "so amorphous and diverse" that it was not "reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief")).

Plaintiff's Amended Complaint therefore should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Amended Complaint.

Dated: October 26, 2012

MAYER BROWN LLP

/s/ A. John P. Mancini
A. John P. Mancini
Matthew D. Ingber
Allison Levine Stillman
1675 Broadway
New York, NY 10019
jmancini@mayerbrown.com
mingber@mayerbrown.com
astillman@mayerbrown.com
Tel: 212.506.2295
Fax: 212.849.5895

*Attorneys for Defendant Google Inc.*

**GREENBERG TRAURIG, LLP**

/s/ Kenneth L. Steinthal
Kenneth L. Steinthal
Joseph R. Wetzel
4 Embarcadero Center, Suite 3000
San Francisco, California 94111
steinthal@gtlaw.com
wetzelj@gtlaw.com
Tel: 415.655.1300
Fax: 415.707.2010

Jeff E. Scott (*pro hac vice* application pending)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
scottj@gtlaw.com
Tel: 310.586.7700
Fax: 310.586.7800

*Attorneys for Defendants Apple Inc.,*
*Amazon.com, Inc., Microsoft Corporation,*
*eMusic.com Inc., The Orchard Enterprises, Inc.,*
*and Orchard Enterprises NY, Inc.*