UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NORMAN BLAGMAN, individually and on behalf       :
of all others similarly situated,                :
                                                 :
                               Plaintiff,         :       Dkt No. 12 CIV 5453 (ALC)(JCF)
                                                 :
    -against-                                  :
                                                 :
APPLE INC., AMAZON.COM, INC., GOOGLE INC.,       :
MICROSOFT CORPORATION, EMUSIC.COM INC.,          :
THE ORCHARD ENTERPRISES, INC.,                   :
ORCHARD ENTERPRISES NY, INC.,                    :
and John Does 1-10, persons and entities whose identities :
are unknown to Plaintiff but who have performed  :
and participated in the unlawful acts alleged herein, :
                                                 :
                               Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR THE ISSUANCE OF LETTERS OF REQUEST**


SCHWARTZ & PONTERIO, PLLC
134 West 29th Street, Suite 1006
New York, New York 10001
Telephone: (212) 714-1200

GISKAN SOLOTAROFF
ANDERSON & STEWART LLP
11 Broadway - Suite 2150
New York, New York 10004
Telephone: (212) 847-8315

*Attorneys for Plaintiff and the Proposed Class*

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NORMAN BLAGMAN, individually and on behalf       :
of all others similarly situated,                :
                                                 :
                         Plaintiff,              :   Dkt No. 12 CIV 5453 (ALC)(JCF)
                                                 :
      -against-                                  :
                                                 :
APPLE INC., AMAZON.COM, INC., GOOGLE INC.,       :
MICROSOFT CORPORATION, EMUSIC.COM INC.,          :
THE ORCHARD ENTERPRISES, INC.,                   :
ORCHARD ENTERPRISES NY, INC.,                    :
and John Does 1-10, persons and entities whose identities :
are unknown to Plaintiff but who have performed  :
and participated in the unlawful acts alleged herein, :
                                                 :
                         Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR THE ISSUANCE OF LETTERS OF REQUEST**

Plaintiff Norman Blagman respectfully submits this Memorandum of Law, together with the Declarations of Norman Blagman and Mathew F. Schwartz and the accompanying exhibits in support of his motion for the issuance of Letters of Request, pursuant to (i) Rule 28(b) of the Federal Rules of Civil Procedure and (ii) the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, reprinted at 28 U.S.C. § 1781 (the "Hague Evidence Convention").

The proposed Letters of Request seek the appropriate authorities in the United Kingdom and France to direct non-party witnesses consisting of certain record labels and digital music aggregators based there to provide testimony through deposition upon oral examination. Based on the investigation conducted by Plaintiff's counsel, there is good reason to believe that these record labels and aggregators (collectively, the "Suppliers") are reproducing, importing, and

1

distributing digital recordings embodying copyrighted compositions owned by Plaintiff and by members of the proposed class to the Defendants' US online music stores, all without proper licenses or authorizations from the owners of the copyrighted compositions and in violation of the Copyright Act.

Plaintiff seeks testimony from the Suppliers concerning any authorization or permission they have obtained to reproduce, import and distribute the copyrighted compositions of Plaintiff Blagman and other potential class members. This evidence is relevant to Plaintiff's individual claims, the claims of the class, and to class certification. In addition, this evidence is also relevant to the Defendants claims that they believe their suppliers obtain the necessary licenses.

Although Plaintiff's counsel has contacted each of the Suppliers and attempted to obtain statements from them on a voluntarily basis, the Suppliers have refused to do so. Accordingly, the issuance of Letters of Request under the procedures of the Hague Evidence Convention is the only feasible means for Plaintiff to obtain this evidence for this proceeding.

A.   **Factual and Procedural Background**

This lawsuit and proposed class action is brought on behalf of Plaintiff Norman Blagman and the owners of registered copyrighted compositions seeking money damages and injunctive relief for the unauthorized duplication and distribution of musical works through Defendants' digital music stores. Plaintiff alleges that the songs reproduced, distributed and sold by the Defendants in their online music stores are not properly licensed and that as a result, a large number of copyrighted musical works are being infringed by the Defendants.

Plaintiff and class representative Norman Blagman is a legal and/or beneficial owner of numerous original copyrighted musical compositions, including the following three compositions which have been copied, publicly distributed, sold, and performed by the Defendants in violation

of the Copyright Act: (1) *The Prowl*; (2) *Jazz is His Old Lady My Old Man*; and (3) *It'll Never Be Over For Me* (collectively, the "Subject Compositions").[1]

The Defendants have all infringed Plaintiff's copyrights by reproducing, distributing, and selling digital recordings embodying the Subject Compositions as individual downloads or as part of various albums without license or authorization.[2] Plaintiff has also learned that thousands of other digital recordings, embodying the copyrighted compositions of other copyright owners that constitute the Class, are also being reproduced, distributed and sold unlawfully by Defendants.[3]

During discovery and investigation into these claims, it has become apparent that many of the digital recordings illegally reproduced and distributed by the Defendants are supplied by entities located overseas.[4] These include both record labels and aggregators. Record labels are entities that produce and distribute recorded music. Record labels then enter into arrangements with aggregators to upload digital music to Defendants' digital music stores.[5] Plaintiff has identified several record labels and aggregators located in the United Kingdom and France listed below who are reproducing and distributing digital recordings to the Defendants in the United States for sale in the Defendants' U.S. online music stores.[6] Plaintiff has learned that the Suppliers are doing so without license or authorization from the copyright owners and are thereby infringing copyrights owned by Plaintiff and the Class.[7]

---

[1] Amended Complaint ¶ 23. The Amended Complaint ("Compl.") is Docket Number 19.
[2] Cmplt., ¶¶ 42-49, Exhs. D-E
[3] Cmplt., ¶ 51,
[4] Schwartz Dec. ¶¶ 8-20.
[5] Id. at ¶ 6.
[6] Id. at ¶¶ 8-20. Plaintiff's motion is presently limited to the Suppliers described herein. Plaintiff has identified additional foreign labels and aggregators from whom discovery may also be sought but further evidence is required before we can move for a letter of request with respect to these additional entities.
[7] Id. at ¶¶ 8-20.

3

Generally speaking, there are two kinds of digital recordings reproduced, distributed and sold by the Suppliers in the United States that are the subject of this request: (a) "pre-1963 recordings"; and (b) karaoke recordings.[8] The pre-1963 recordings at issue here were first fixed prior to 1963 and are currently owned by record labels in the United States. These recordings may be in the public domain, or "out of copyright" in the U.K. because of the U.K.'s 50-year copyright term for these recordings, and may therefore be sold in the U.K. by anyone without the US copyright owner's authorization.[9] The pre-1963 recordings, however, are not public domain in the U.S., and the recordings and compositions are still protected by US copyright law.

The second kind of recording is referred to herein as "Karaoke Recordings."[10] For the purposes of this motion, "Karaoke Recordings" refers to any new recording of a song previously recorded and distributed.[11] The musical compositions embodied on the Karaoke Recordings are also subject to the protections afforded under the Copyright Act.

In order to sell the pre-1963 Recordings and Karaoke Recordings we have identified, the Defendants and/or the Suppliers are required to obtain mechanical licenses, whether negotiated or pursuant to compulsory licensing procedure available under 17 U.S.C. § 115, and to obtain authorization from the US copyright owners for importation of these recordings, pursuant to 17 U.S.C. § 602. As set forth below, the Suppliers have not obtained licenses or import authorizations for Plaintiff's copyrighted compositions, or, for the copyrighted compositions of the Class.

---

[8] Id. at ¶¶ 8, 15.
[9] Id. at ¶¶ 9 (footnote 2), 15.
[10] Id. at ¶¶ 10,15.
[11] Karaoke Recordings are generally produced without vocals to enable amateur singers to easily sing along with the music. Some Karaoke Recordings contain vocals, or "lead track" to demonstrate the melody of the composition to the amateur singer. Almost all of the Karaoke Recordings referenced in this motion are formatted this way.

By this motion, Plaintiff seeks court authorization to take discovery in the United Kingdom from the Suppliers consisting of the following six individuals and/or entities as follows:

a. Michael Bennett (Labels: Playbak, Taskmaster, Vantage Point, Tripswitch, Digilouge)
b. Second Wind Digital
c. Rants LTD
d. Thomas Colley (Labels: Magnitude, Zodiac 649, Karaoke Universe. Sixth Right, Seventh Right, Eighth Right, Ninth Right, Tenth Right and 13th Right))
e. Routenote Limited
f. Believe Digital SAS

Each of these entities is either an aggregator or record label that offers digital music for sale in the Defendants' U.S. online music stores. Each group of record labels and aggregators identified in this motion has imported and distributed Plaintiff's compositions, and the compositions of many members of the Class, in the Defendants' U.S. online music stores. Plaintiff Norman Blagman states that he has never authorized or licensed any of the Suppliers to import any of his compositions into the U.S. and has never granted permission to any of the Suppliers to reproduce or distribute his musical works in the Defendants' U.S. online music stores.[12] Similarly, it appears from the investigation conducted by Plaintiff's counsel that the Suppliers have not obtained authorizations or permission from the members of the class to import or distribute the class members' compositions in Defendants' U.S. stores.[13]

**B.     Facts Relating To Entities From Which Plaintiff Seeks Evidence.**

**1.     Labels Affiliated with Michael Bennett and their Aggregators**
(Labels: Playbak, Taskmaster, Vantage Point, Tripswitch, Digilouge)
(Aggregators: Second Wind Digital, Rants LTD)

Michael Bennett is the owner of several labels in the UK selling unlicensed music in the Defendants' online music stores, including Playbak Records ("Playbak"), Taskmaster, Vantage

---

[12] Blagman Decl., ¶¶ 3,13.
[13] Schwartz Decl., ¶¶ 8-20.

5

Point, Tripswitch, and Digilouge.(the "Bennett Labels").[14] The Bennett Labels have a combined catalog of over 75,000 tracks available for sale in the Defendants' online music stores: Playbak (4,674 tracks), Taskmaster (9,631 tracks), Vantage Point (14,113 tracks), Tripswitch (12,432 tracks), and Digilouge (35,431 tracks).[15] As noted in the Blagman Declaration, at least one of the Bennett Labels, Vantage Point, is importing, copying, and distributing a recording of Plaintiff's composition *It'll Never Be Over For Me* without Plaintiff's authorization or consent. Blagman Decl., ¶¶ 12-13, Exh. 2.

Plaintiff's counsel spoke with Michael Bennett (and his business representative Donald Gallagher) on several occasions in October this year and asked them whether the Bennett Labels had obtained licenses and import authorization for any of the musical compositions he was reproducing, distributing and selling in the Defendants' U.S. online music stores.[16] Mr. Bennett conceded that he did not have licenses or authorizations to do so and that none of the Bennett Labels owned the rights to any of the Pre-1963 Recordings they were selling and stated that they had been made available in the US online stores in error.[17] Mr. Bennett further stated that he would have the Pre-1963 Recordings removed from the U.S. online stores, but he has not done so.[18]

With respect to the Karaoke Recordings, Mr. Bennett stated that his labels were not required to obtain licenses to sell recordings embodying compositions owned by others.[19] Mr. Bennett requested that Plaintiff's counsel not notify Apple or any of the other Defendants about

---

[14] Id. at ¶ 8.
[15] Id. at ¶ 8.
[16] Id. at ¶ 9.
[17] Id. at ¶ 9.
[18] Id. at ¶ 9.
[19] Id at ¶ 10.

6

the unauthorized content in the US online stores and stated that his was a "miniscule company" and reiterated that the Bennett Labels were not a major player in the scheme of things.[20]

Mr. Bennett subsequently contacted Plaintiff's counsel on October 29, 2013 and claimed that his labels were paying royalties for the compositions embodied on the Karaoke Recordings "retrospectively" through their aggregators in the U.S.[21] Although Mr. Bennett was asked to provide confirmation of these payments, he has not done so and has not returned calls or e-mails from Plaintiff's counsel since then.[22]

On October 17, 2013, Plaintiff's counsel spoke with Paul Johannes ("Johannes"), the General Manager at Second Wind Digital ("Second Wind"), an aggregator in the UK that distributes over 15,000 digital recordings on behalf of two of the Bennett Labels: Playbak and Taskmaster.[23] Johannes confirmed that Second Wind distributes Playbak and Taskmaster but does not obtain licenses or authorizations for the musical works embodied in the recordings supplied by the Bennett Labels, or any other label.[24] Johannes also confirmed that Second Wind does not pay any money to the US copyright owner of the musical works embodied the recordings supplied by the Bennett Labels, or any other label for that matter.[25] Finally, Johannes confirmed that Second Wind relies on the labels it distributes, including the Bennett Labels, to obtain all necessary licenses and authorizations to reproduce, distribute and sell the musical works in the United States.[26] Plaintiff's counsel requested that Mr. Johannes and/or Second Wind provide a sworn statement regarding these matters but Mr. Johannes has not responded.[27]

---

[20] Id at ¶ 10.
[21] Id at ¶ 11.
[22] Id at ¶ 11.
[23] Id at ¶ 12. All Retailer Defendants except Microsoft have identified Second Wind as an aggregator with more than 1,000 tracks available in their stores. Id at ¶ 12 (footnote 3).
[24] Id at ¶ 12.
[25] Id at ¶ 12.
[26] Id at ¶ 12.
[27] Id at ¶ 12.

On October 18, 2013, Plaintiff's counsel spoke with Adrian Workman ("Workman"), a Director at Rants Ltd. t/a VidZone ("Rants"), another aggregator that distributes (directly, or in connection with US based aggregator, INgrooves) over 14,000 digital recordings on behalf of two of the Bennett Labels: Vantage Point and Tripswitch.[28] Workman confirmed that Rants distributes Vantage Point and Tripswitch but does not obtain licenses or authorizations for the musical works embodied on the recordings supplied by the Bennett Labels, or any other label.[29] Workman further stated that Rants does not pay any money to the US copyright owner of the musical works embodied the recordings supplied by the Bennett Labels, or any other label for that matter.[30] Workman stated that Rants distributes 3-4 million tracks and confirmed that Rants relies on the labels it distributes, including the Bennett Labels, to obtain all necessary licenses and authorizations to distribute and sell the musical works in the United States because Rants was not capable of doing this for such a large number of tracks.[31] Plaintiff's counsel requested that Mr. Workman and/or Rants to provide a sworn statement regarding these matters but Mr. Workman has not responded.[32]

After Plaintiff's counsel's initial conversations with Bennett, Second Wind and Rants, Plaintiff's counsel identified Digilouge as yet an additional Bennett Label.[33] Based on the foregoing, it appears that the Bennett Labels are reproducing, distributing, importing and selling digital music, including a recording embodying Plaintiff's composition, *It'll Never Be Over For Me,* and recordings embodying compositions of class members, in the Defendants' US online music stores.

---

[28] Id at ¶ 13. All Retailer Defendants have identified Rants and/or INgrooves as aggregators with more than 1,000 tracks available in their stores. Id at ¶ 13 (footnote 4).
[29] Id at ¶ 13.
[30] Id at ¶ 13.
[31] Id at ¶ 13.
[32] Id at ¶ 13.
[33] Id at ¶ 14.

**2.   Labels Affiliated with Thomas Colley and Corresponding Aggregators**
(Labels: Magnitude, Zodiac 649, Sixth Right, Seventh Right, Eighth Right, Ninth Right, Tenth Right and 13th Right)
(Aggregators: Routenote and Believe Digital)

Based on the investigation of Plaintiff's counsel, including a search of publicly available materials online and conversations with Michael Bennett and several of the aggregators, there is reason to believe that Thomas Colley owns or otherwise controls several labels located in the UK that are selling unlicensed music in the Defendants' U.S. online music stores, including Magnitude Records ("Magnitude"), Zodiac 649, Karaoke Universe, Sixth Right, Seventh Right, Eighth Right, Ninth Right, Tenth Right and 13th Right (collectively, the "Colley Labels").[34] The Colley Labels have a combined catalog of over 40,000 tracks in several of the Defendants' online music stores: Magnitude Records ("Magnitude")(12,215 tracks), Zodiac 649 (5,468 tracks), Sixth Right Records ("Sixth Right")(3,694 tracks), Seventh Right Records ("Seventh Right")(3,696 tracks), Eighth Right Records ("Eighth Right")(4,475 tracks), Ninth Right Records ("Ninth Right")(3,625 tracks), Tenth Right Records ("Tenth Right")(3,695 tracks), and 13th Right Records ("13th Right")(3,664 tracks).[35]

It appears that Colley's labels also unlawfully copy and distribute digital music without obtaining authorization or consent from the owners of the copyrighted compositions therein. As noted in the Blagman Declaration, Magnitude is importing, reproducing, and distributing Blagman's composition *It'll Never Be over For Me* without Blagman's authorization or consent.[36]   Moreover, Colley has a close relationship with Bennett, who has admitted to distributing music unlawfully. According to Colley's online CV posted on the Music Jobs website and his Facebook profile, Colley worked as Label Manager for two of the Bennett

---

[34] Id at ¶ 15.
[35] Id at ¶ 15.
[36] Blagman Decl., ¶¶ 12-13, Exh. 2

9

Labels, Digilouge and Playbak.[37]  In addition, Colley has identified himself as the owner of Magnitude Records on his LinkedIn profile. [38]

The Colley Labels are distributed by the following aggregators: Routenote Limited formerly known as Insomnia Limited ("Routenote") and Believe Digital SAS ("Believe").[39] Routenote is an aggregator in the UK that reproduces, imports and distributes over 10,000 digital music tracks to the Defendants' US online music stores on behalf of the Colley Labels, Magnitude and Zodiac 649.  On November 26, 2013, Plaintiff's counsel spoke with Steven Finch, Routenote's CEO and asked him whether or not Routenote secures authorization for the importation and distribution of digital music on behalf of the Colley Labels in the Defendants' US online music stores. [40] Plaintiff's counsel has followed up on that verbal request with a letter and e-mail requesting specific information about Routenote's distribution of Magnitude and a formal statement.  Mr. Finch declined to answer Plaintiff's counsel's questions and has not responded to e-mail. [41]

Believe Digital confirmed to plaintiff's counsel that, according to its records, Colley was the owner of Magnitude and all of the Right Labels; that, as part of the distribution process, the Colley Labels made representations to Believe that they had the necessary licenses and rights to sell the relevant recordings in the US; that Believe does not take any steps to obtain licenses on behalf of the labels it distributes and that it relies on its labels, such as the Colley Labels, to obtain the necessary licenses and authorizations.[42] Believe's representative further stated that

---

[37] Id. at 16, Exh. 19.
[38] Id. at 16, Exh. 20.
[39] Id. at 18.
[40] Id.
[41] Id.
[42] Id. at 20.

10

Believe does not pay publishing royalties on US sales and that she believed these were paid by the US online music stores.[43]

The evidence shows that the Colley Labels are reproducing, distributing, importing and selling recordings of Plaintiff's composition *It'll Never Be Over For Me,* along with recordings of compositions belonging to the Class in the Defendants' U.S. online music stores, all without authorization or license from Plaintiff or members of the proposed Class.

## ARGUMENT

## POINT I

## THIS COURT HAS AUTHORITY TO ISSUE THE LETTERS OF REQUEST

**A.     Applicable Law**

The United States, the United Kingdom, and France are all signatories to the Hague Evidence Convention and are bound by its provisions as "Contracting States." The Hague Evidence Convention allows a court in one Contracting State to request another Contracting State to "obtain evidence, or to perform some other judicial act" by use of a Letter of Request. Hague Convention, Ch. I, Art. 1 (see 23 U.S.T. 2555); See also 28 U.S.C. §1781; *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 533 (1987). As an international treaty, the Hague Convention is recognized as part of the supreme law of the United States. U.S. Const. Art. VI, Cl. 2; *Laker Airways, Ltd. v. Pan Am. World Airways,* 103 F.R.D. 42, 49 (D.D.C. 1984) (affirming that the Hague Convention is an international treaty and as such is entitled to be recognized as the supreme law of the land under Article VI, Clause 2, of the United States Constitution).

The purpose of the Hague Convention is to facilitate and increase the exchange of information necessary for legal proceedings between nations. *Societe Nationale*, 482 U.S. at 534;

---

[43] Id. at 20.

11

*Laker Airways,* 103 F.R.D. at 49. The preamble to the Hague Convention states its purpose is to "improve mutual judicial co-operation in civil or commercial matters" and to "facilitate the transmission and execution of Letters of Request." Hague Convention (see 23 U.S.T. 2555). *See also Societe Nationale*, 482 U.S. at 534. The Letter of Request is sent to a "Central Authority" designated by the Contracting State to receive requests from courts of other member countries. Id. at Art. 2. The Central Authority then sends the request to the appropriate court or officer to execute the request.

**B.     Plaintiff's Request for Evidence is Consistent with the Law of the United Kingdom and France**

As noted above, both the United Kingdom and France are signatories to the Hague Evidence Convention, and courts there have the power to compel the production of documents and the giving of oral testimony for purposes of foreign proceedings in appropriate circumstances.

Pursuant to the Evidence (Proceedings in Other Jurisdictions) Act 1975 c.34 (the "1975 Act"), if the High Court of England receives an application ... for an order for evidence to be obtained in the part of the United Kingdom in which it exercises jurisdiction, and the court is satisfied (a) that the application is made in pursuance of a request issued by or on behalf of a court or tribunal ("the requesting court") exercising jurisdiction ... in a country or territory outside the United Kingdom; and (b) that the evidence to which the application relates is to be obtained for purposes of civil proceedings which ... have been instituted before the requesting court, the High Court has the power to carry out the application.[44] This may include issuance of

---

[44] Reflecting principles of judicial and international comity, "[t]he general principle which is followed in England in relation to a request from a foreign Court for assistance in obtaining evidence for the purpose of proceedings in that Court is that the English Court will ordinarily give effect to a request so far as is proper and practicable and to the extent that it is permissible under English law." Section A Civil Procedure Rules 1998 c.34.21.2 (citing *Seyfang v. G.D. Searle & Co.* [1973] Q.B. 148 at 151; [1973] 1 All E.R. 290 at 293).

an order "for the examination of witnesses, either orally or in writing" or "for the production of documents." Id. (1975 Act 2(2)(a) and (2)(b)). *See also Rio Tinto Zinc Corp. v. Westinghouse Electric Corp.,* [1978] A.C. 547, 2 W.L.R. 81.

As a general matter, the 1975 Act gives the High Court of England the "power ... by order to make such provision for obtaining evidence in ... the United Kingdom [including by] the examination of witnesses, either orally or in writing." 1975 Act 2(1) and (2)(a). *See also*, *Apple Computers Inc. v. Doe,* 2002 WL 314 76324 (QBD), [2002] EWHC 2064, at 8 ("Under the procedure of the High Court of England depositions of witnesses ... may be taken before examiners for use at the trial [so long as] the subject matter of such deposition is restricted to the evidence admissible at trial."). Because Plaintiff intends to use the testimony and documents sought at trial, and because the subjects in Schedule B will produce evidence admissible at trial, Plaintiff's proposed Letter of Request precisely follows these guidelines.

The Hague Evidence Convention is similarly enabled in France by The Nouveau Code de Procédure Civile ("New Code of Civil Procedure") enacted by France in 1975 contains specific provisions on international letters rogatory designed to implement the Convention procedures. Among these provisions are article 739, which permits letters of request to be executed in accordance with the instruction of a foreign court, and article 740, which permits foreign attorneys on authorization from the judge to examine witnesses. Article 739 denies French courts the right to refuse execution of letters of request on the grounds of incompatibility. 1 New Code of Civil Procedure in France 153, 214 (F. de Kerstrat and W. Crawford, trans, 1978).

These prerequisites are clearly present here: this Court is presently exercising jurisdiction over this dispute, and the evidence Plaintiff seeks relates directly to the ongoing civil proceeding, and consists of requests for oral testimony.

# POINT II

## THE EVIDENCE SOUGHT IS RELEVANT AND WILL BE ADMISSIBLE AT TRIAL ON PLAINTIFF'S INDIVIDUAL CLAIMS, THE CLASS CLAIMS, AND ON ISSUES RELATING TO CLASS CERTIFICATION

The evidence sought from the Suppliers is relevant and will be admissible at trial on Plaintiff's individual claims, the claims of the Class and for class certification.

Essentially, Plaintiff seeks to obtain evidence from the Suppliers to conclusively establish whether they obtained permission or authority to reproduce, distribute and import the copyrighted compositions of Plaintiff and members of the Class as embodied on the recordings they made and distributed to the Defendants' US online music stores

This evidence is directly relevant to the claims in this case because as set forth below, unless such permission or authority is obtained, the Defendants are liable to Plaintiff and the Class for copyright infringement. Under the Copyright Act, Plaintiff and all owners of the copyrights in non-dramatic musical compositions have the exclusive right to reproduce and distribute their copyrighted songs and to authorize others to engage in such activity (the "mechanical right"). 17 U.S.C. § 106. Once a song is distributed publicly other parties that meet the requirements of the Copyright Act may make and distribute their recording of the song if they obtain a "mechanical license" from the copyright owner of the musical composition. A mechanical license can be obtained by direct negotiation or under the compulsory license procedures set forth in 17 U.S.C. § 115.[45]

In addition to the exclusive rights of reproduction and distribution, the U.S. Copyright Act also affords copyright owners the exclusive right to authorize the importation of their work

---

[45] Section 115 states "Any person who wishes to obtain a compulsory license under this section shall . . . before distributing any phonorecords of the work, serve notice of intention to do so on the copyright owner. " 17 U.S.C. § 115(b)(1). (emphasis added). Further, "Failure to serve or file the notice required by clause (1) forecloses the possibility of a compulsory license and . . . renders the making and distribution of phonorecords actionable as acts of infringement under section 501 and fully subject to the remedies provided by sections 502 through 506 and 509." 17 U.S.C. § 115(b)(2).

under 17 U.S.C. § 602. "The right to distribute the work includes the right to import it." *U2 Home Entertainment, Inc. v. Lai Ying & Video Trading, Inc. and Wei Peng Yuan, 2005 Copr.L.Dec. P 28,999;* 17 U.S.C. § 602. Section § 602 of the Copyright Act clearly states that importation without authorization is distribution: "[i]mportation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies or phonorecords under section 106, actionable under section 501." 17 U.S.C. § 602. See *Nintendo of America, Inc. v. Elcon Industries, Inc.*, 564 F.Supp. 937, 943-944 (E.D. Mich. 1982) ("[t]he importation itself is an infringement of plaintiff's copyright").

Anyone who reproduces, distributes or imports a recording containing a copyrighted composition without obtaining a license or authorization from the copyright owner of the compositon, including entities such as Defendants who distribute recordings provided to them by others, is liable for copyright infringement.

As set forth in his declaration, Norman Blagman, is the sole owner of the US copyright in the musical composition *It'll Never Be Over For Me*. Blagman Decl., ¶¶ 6-11. Plaintiff states he never received any request from any of the Suppliers for authorization to import these recordings of his composition into the US or to reproduce and distribute these recordings in the Defendants' online music stores. Blagman Decl., ¶¶ 12-13.  Further, Plaintiff states that he has never received any payments or statements from the Defendants or from any of the Suppliers for any of their US online sales of *It'll Never Be Over For Me*. Blagman Decl., ¶¶ 12-13.

Defendants, however, may claim that the Suppliers may have obtained an authorization from Plaintiff to reproduce, distribute or import recordings of Plaintiff's composition. To

preclude or rebut that defense, Plaintiff requires evidence from the Suppliers to confirm that no such authorizations were obtained.

Similarly, Defendants may claim that the Suppliers obtained authorizations to reproduce, distribute or import recordings of compositions of the Class.  To preclude or rebut such a defense to the class claims, Plaintiff requires evidence relating from the Suppliers to confirm what appears likely – that the U. K. Suppliers do not obtain authorization to import and distribute the recordings they sell through Defendants' U.S. digital music stores.

Finally, the requested evidence is relevant to class certification.  Plaintiff has informed the Court that he intends to seek obtain class certification on a label by label basis.  By confirming through the requested discovery that the Suppliers do not, as a matter of practice, obtain authorizations for the reproduction, distribution or importation of the recordings they sell in Defendants' U.S. digital music stores, Plaintiff will be able to establish that there is one answer to the question of licensing for broad blocs of songs distributed by each of the relevant labels and that the owners of the copyrighted compositions offered for sale by the Suppliers should be included in the Class.

**Conclusion**

For all of the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order, in the form annexed to the Schwartz Declaration as Exhibit 4, granting his motion to obtain evidence from the Suppliers and issuing Letters of Request in the form annexed to the Schwartz Declaration as Exhibit 3, and granting such further relief as the Court deems proper.

Dated: New York, New York
January 31, 2014

SCHWARTZ & PONTERIO, PLLC

By: _____
Matthew F. Schwartz
Brian S. Levenson
134 West 29th Street - Suite 1006
New York, NY 10001
Telephone: (212) 714-1200

GISKAN SOLOTAROFF
ANDERSON & STEWART LLP
Jason L. Solotaroff
Oren Giskan
11 Broadway - Suite 2150
New York, NY 10004
Telephone: (212) 847-8315

*Attorneys for Plaintiff and the Proposed Class*