UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
NORMAN BLAGMAN, individually and  : 12 Civ. 5453 (ALC) (JCF)
on behalf of all others similarly  :
situated,                          :       MEMORANDUM
                                   :       AND  ORDER
                                   :
            Plaintiff,             :
                                   :
   - against -                     :
                                   :
APPLE, INC., AMAZON.COM, INC.,     :
GOOGLE, INC., MICROSOFT            :
CORPORATION, EMUSIC.COM INC., THE  :
ORCHARD ENTERPRISES, INC., ORCHARD :
ENTERPRISES NY, INC., and JOHN DOES:
1-10, persons and entities whose   :
identities are unknown to plaintiff:
but who have performed and         :
participated in the unlawful acts  :
alleged herein,                    :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

        The plaintiff, Norman Blagman, brings this action individually

and on behalf of a proposed class, alleging that the defendants

illegally reproduced and distributed musical works through their

U.S.-based online stores without acquiring licenses for the

underlying compositions.  Mr. Blagman now asks the Court, pursuant

to Rule 28 of the Federal Rules of Civil Procedure, to issue

letters rogatory requesting that authorities in the United Kingdom

and France order six third-party witnesses to appear for

depositions.  These depositions are warranted, the plaintiff

contends, as discovery and investigation have revealed that many of the digital recordings at issue are supplied by entities located outside the United States.

Background

Mr. Blagman is a musician with over fifty years experience writing, producing, and recording music. (Declaration of Norman Blagman dated Jan. 16, 2014 ("Blagman Decl."), ¶ 5). He is the composer and copyright owner of "numerous original copyrighted compositions," including three specific works that he alleges have been illegally copied, publicly distributed, sold, and performed by the defendants through their online music stores. (Memorandum of Law in Support of Plaintiff's Motion for the Issuance of Letters of Request ("Pl. Memo.") at 2-3).[1]  Mr. Blagman sues on his own behalf and on behalf of a proposed class including all copyright owners of one or more registered musical compositions that have been reproduced, distributed, or sold by the defendants. (Amended Complaint ("Am. Compl."), ¶ 52).  The defendants consist of two groups.  The first is comprised of major digital music retailers -- Amazon, Apple, EMusic, Google, and Microsoft (the "Retailer Defendants") -- representing over 80 percent of the U.S. digital music market. (Am. Compl., ¶¶ 14-18, 87-98).  The second includes

---

[1] The terms letters of request and letters rogatory are used interchangeably.

Orchard Enterprises and other John Doe aggregators who supply digital recordings to the Retailer Defendants.[2]   (Am. Compl., ¶¶ 99-111).

Based on the results of discovery and investigation by counsel, the plaintiff believes that certain foreign record labels and aggregators are reproducing and uploading infringing recordings to the U.S. online stores of the Retailer Defendants.  (Pl. Memo. at 1-3).  Customers based in the United States can then purchase and download the recordings.  Two types of recordings are at issue: recordings made before 1963 and karaoke recordings.  The plaintiff has identified six individuals or entities that he seeks to depose: (1) Michael Bennett (the owner of labels Playbak, Taskmaster, Vantage Point, Tripswitch, and Digilouge); (2) the aggregator Second Wind Digital; (3) the aggregator Rants Ltd; (4) Thomas Colley (the owner of labels Magnitude, Zodiac 649, Karaoke Universe, Sixth Right, Seventh Right, Eighth Right, Ninth Right, Tenth Right, and 13th Right); (5) the aggregator Routenote Limited; and (6) the aggregator Believe Digital SAS.  (Pl. Memo. at 5-10). Mr. Blagman avers that he never licensed or authorized any of these entities (collectively, the "Suppliers") to reproduce or distribute

---

[2]  Record labels produce and distribute musical recordings, while aggregators are entities that acquire digital distribution rights to recordings from the labels and then upload the recordings to online music stores.

his compositions in the Retailer Defendants' U.S. online stores, yet the recordings are nonetheless available there. (Pl. Memo. at 5; Blagman Decl., ¶¶ 3, 12-13).

The plaintiff has contacted, through counsel, several of the entities he now seeks to depose. Mr. Bennett, whose labels have a combined catalog of over 75,000 tracks available for sale in the Retailer Defendants' online music stores, confirmed that he did not obtain licenses or import authorization for the compositions embodied in the digital recordings he supplied to the Retailer Defendants. (Pl. Memo. at 6). He stated that any pre-1963 recordings were unlicensed, that they had been uploaded to the U.S. music stores in error, and that they would be removed. (Pl. Memo. at 6). After initially stating that his labels were not required to obtain licenses in the underlying compositions when selling karaoke recordings, Mr. Bennett subsequently told plaintiff's counsel that royalties were being paid "retrospectively through [the labels'] aggregators in the [United States]." (Pl. Memo. at 6-7). Following these conversations, Mr. Bennett has not returned telephone calls and e-mails from plaintiff's counsel seeking more information (Pl. Memo. at 7), and the pre-1963 recordings remain available online (Pl. Memo. at 6).

Plaintiff's counsel also spoke with two aggregators -- Second Wind Digital and Rants Ltd. -- that work with certain of Mr.

Bennett's labels. (Pl. Memo. at 7-8). Through representatives, both aggregators confirmed that they do not acquire licenses for the compositions embodied in the recordings and instead expect the labels to obtain the proper copyright authorization. (Pl. Memo. at 7-8). Nor do the aggregators pay money to the U.S. copyright owner of the recorded compositions. (Pl. Memo. at 7-8). Neither representative has responded to the plaintiff's request for a sworn statement. (Pl. Memo. at 7-8).

The plaintiff also believes, based on investigation and conversations with aggregators, that Thomas Colley controls several U.K.-based labels that sell unlicensed music in the Retailer Defendants' U.S. online music stores. (Pl. Memo. at 9). The plaintiff has identified one such label that is supplying a digital recording of Mr. Blagman's composition "It'll Never Be Over For Me" without authorization. (Pl. Memo. at 9). The plaintiff has not communicated with Mr. Colley, but has spoken with two of his label's aggregators, Routenote and Believe Digital SAS. (Pl. Memo. at 10). Routenote's CEO declined to answer the questions posed by plaintiff's counsel, but a Director of Believe Digital SAS stated that Mr. Colley represented that his labels had all necessary licenses and authorizations, and that Believe Digital did not obtain licenses on behalf of the labels whose recordings it distributes. (Pl. Memo. at 10-11).

The letters rogatory sought by the plaintiff, identical in substance, outline three topics for the requested depositions. (Request for International Judicial Assistance (Letter of Request) by the United States District Court for the Southern District of New York ("Proposed Letters Rogatory"), attached as Exhs. 3.1-3.6 to Declaration of Matthew F. Schwartz dated Jan. 30, 2014).[3]  The first topic concerns mechanical licensing and, specifically, whether the third-party entity "obtained digital phonorecord delivery or mechanical licenses pursuant to the U.S. Copyright Act to make and distribute digital sound recordings embodying copyrighted compositions registered in the United States." (Proposed Letters Rogatory at 8).  The second topic focuses on duplication of already-fixed sound recordings and whether the entity was granted authority to duplicate such recordings by either the copyright owners in the sound recordings or by any person who fixed the sound recording pursuant to a compulsory license or an express license from the copyright owner of the musical work. (Proposed Letters Rogatory at 9).  The third topic relates to whether the entity obtained import authorization for recordings embodying copyrighted compositions registered in the United States, for distribution and sale in the Retailer Defendants' U.S. online

---

[3] As the Proposed Letters Rogatory are materially identical but for pagination, I will refer only to Exh. 3.1 throughout.

music stores.  (Proposed Letters Rogatory at 9).  These requests
are limited to the time period from July 13, 2009 to the present.
(Proposed Letters Rogatory at 8-9).  While the plaintiff originally
included a request for document production as part of the proposed
letters rogatory, this request has since been withdrawn.  (Reply
Memorandum of Law in Further Support of Plaintiff's Motion to
Compel at 10 n.6).

A. <u>Procedural History</u>

I have twice entertained requests from the plaintiff regarding
discovery of extraterritorial conduct.  Following a hearing on
November 19, 2013, I issued an order barring  the plaintiff from
pursuing discovery relating to customers based outside the United
States.  (Order dated Nov. 20, 2013).  On January 31, 2014, I
denied the plaintiff's request to question a third-party witness on
exports and other extraterritorial conduct, on the grounds that
such topics reached beyond the claims pleaded in the operative
Complaint.  (Memorandum Endorsement dated Jan. 31, 2014).  The
plaintiff has now filed a motion requesting leave to amend the
Complaint for a second time, explicitly adding import and export
claims under 17 U.S.C. § 602.  (Plaintiff's Memorandum of Law in
Support of Motion for Leave to File Second Amended Complaint at 1).
However, the operative complaint for the purposes of this motion is
the First Amended Complaint, filed October 12, 2012.

7

Discussion

    A. <u>Legal Standard</u>

        1. <u>Letters Rogatory</u>

Pursuant to Rule 28 of the Federal Rules of Civil Procedure, a deposition of a third party may be taken in a foreign country "on appropriate terms after application and notice of it."  Fed. R. Civ. P. 28(b)(2)(A).  One method for seeking discovery abroad is issuing a letter of request through the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Evidence Convention"), which charges the signatory nations (including the United Kingdom and France) to cooperate on discovery matters.  <u>Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa</u>, 482 U.S. 522, 530-31 (1987).  Letters rogatory are the means by which a court can formally request that a court in another country lend its judicial assistance in obtaining evidence or performing some other judicial act.  <u>See, e.g.</u>, <u>Lantheus Medical Imaging, Inc. v. Zurich American Insurance Co.</u>, 841 F. Supp. 2d 769, 775 (S.D.N.Y. 2012); <u>see also</u> 28 U.S.C. § 1781(b)(2).  Parties based in the United States may use letters rogatory to "'take evidence from a specific person within the foreign jurisdiction.'"  <u>Lantheus Medical Imaging</u>, 841 F. Supp. 2d at 775 (quoting Black's Law Dictionary 778 (9th ed. 2009); <u>see also</u> <u>Intel Corp. v. Advanced Micro Devices,</u>

Inc., 542 U.S. 241, 247 n.1 (2004); In re Optimal U.S. Litigation, 837 F. Supp. 2d 244, 259 (S.D.N.Y. 2011) ("Letters rogatory are an appropriate mechanism for securing the testimony of other witnesses who cannot be compelled to appear in this Court." (internal quotation marks omitted)).   Letters rogatory issued through the Hague Convention must provide the foreign officials with certain information regarding the lawsuit and the information sought. Hague Evidence Convention, 23 U.S.T. 2555, Art. 3(f) ("Where appropriate, the Letter shall specify . . . the questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined.").

The determination to issue letters rogatory is committed to the court's discretion.  United States v. Al Fawwaz, No. S7 98 Crim. 1023, 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014); Horvath v. Deutsche Lufthansa, AG, No. 02 Civ. 3269, 2004 WL 241671, at *3 (S.D.N.Y. Feb. 9, 2004).  In making that determination, the court applies the relevance standards of Rule 26 of the Federal Rules of Civil Procedure.  Lantheus Medical Imaging, 841 F. Supp. 2d at 776; see also Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd., No. 11 Civ. 3108, 2012 WL 4784632, at *3 (S.D.N.Y. Oct. 4, 2012) (noting that "a court should not authorize the service of letters rogatory if it would not approve of the discovery requests in a purely domestic context.").

"Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 557, 561 (S.D.N.Y. 2013) (internal quotation marks omitted). Information that is relevant to any claim or defense of any party is discoverable, as well as information "reasonably calculated to lead to the discovery of admissible evidence," even if such information is not admissible itself. Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the burden of demonstrating relevance; once established, the opposing party must justify any restrictions on discovery. Chen-Oster, 292 F.R.D. at 561; see also Security Insurance Co. of Hartford v. Trustmark Insurance Co., 218 F.R.D. 24, 26-27 (D. Conn. 2003) ("A party opposing issuance of a letter rogatory must show good reason why such letter should not issue." (internal quotation marks omitted)). Discovery may be curtailed where the information sought would be "unreasonably cumulative or duplicative" or when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).

Although a signatory to the Hague Evidence Convention, the United Kingdom reserved its rights to impose stricter pretrial discovery standards when evaluating letters rogatory received from foreign nations. See Protection of Trading Interests Act, 1980, c. 11, § 2 (Eng.). Pretrial depositions may be taken only when "the

subject matter of [the] deposition is restricted to the evidence admissible at trial." Apple Computers, Inc. v. Doe, [2002] EWHC (QB) 2064, 2002 WL 31476324 (Queen's Bench Division Sept. 18, 2002); see also Metso Minerals, Inc. v. Powerscreen International Distribution Ltd., No. 06 CV 1446, 2008 WL 719243, at *5 (E.D.N.Y. March 18, 2008) (noting in appendix that U.K. precedent prohibits deposition of third-party witnesses "for the purpose of seeking information which, though inadmissible at trial, appears to be reasonably calculated to lead to the discovery of admissible evidence.").

In France, following Hague Convention procedures for seeking evidence for use at trial circumvents the so-called 'blocking statute' that otherwise penalizes the production of "documents or information of an economic, commercial, industrial, financial or technical nature" that may affect France's sovereign interests. In re Vivendi Universal, S.A. Securities Litigation, No. 02 Civ. 5571, 2006 WL 3378115, at *1 n.1 (S.D.N.Y. Nov. 16, 2006) (quoting Art. 1 bis of French Law No. 80-538 of July 16, 1980); see also In re Air Cargo Shipping Services Antitrust Litigation, 278 F.R.D. 51, 52 (E.D.N.Y. 2010). Depositions taken pursuant to the Hague Convention are conducted in accordance with French procedure, with the judge typically asking all questions. See United States v. Salim, 664 F. Supp. 682, 687 (E.D.N.Y. 1987), aff'd, 855 F.2d 944

11

(2d Cir. 1988) (noting that French deposition procedure usually entails the judge questioning the witness, with attorneys providing supplemental questions, and results in a dictated summary of the testimony).   However, letters rogatory may request application of the procedural rules of another jurisdiction (such as the Federal Rules of Civil Procedure) and parties may also seek authorization from the French court to ask questions.   See Nouveau Code De Procédure Civile [N.C.P.C.] arts. 736, 739-740 (Fr.) (English translation 2012).   Other courts, considering the scope of depositions sought in France pursuant to letters rogatory, have found sufficient specificity in letters that contain a "brief statement concerning the subject matter and relevance of the request."   See Abbott Laboratories v. Impax Laboratories, Inc., No. Civ.A. 03-120, 2004 WL 1622223, at *3 (D. Del. July 15, 2004); see also Pronova BioPharma Norge AS v. Teva Pharmaceuticals USA, Inc., 708 F. Supp. 2d 450, 453 (D. Del. 2010) (noting that if foreign authorities consider letters rogatory to exceed allowable scope under foreign law, "then the requests will presumably be narrowed by the appropriate judicial authorities in those countries.").

    2. Copyright Act

    The Copyright Act grants the owners of copyrights in non-dramatic music compositions the exclusive rights to reproduce and distribute their copyrighted songs and to authorize others to

engage in such activity. 17 U.S.C. § 106(1), (3). These rights are often called the "mechanical rights" and are governed by the mechanical licensing process. In re Cellco Partnership, 663 F. Supp. 2d 363, 369 (S.D.N.Y. 2009). When an individual who does not own the copyright to a musical composition wishes to make and distribute his own recording of the song, he must first obtain a mechanical license from the copyright owner. Mechanical licenses can be acquired in several ways, including by negotiation (a consensual license) or by following the compulsory licensing procedures provided by 17 U.S.C. § 115. Compulsory licensing is the Copyright Act's attempt to balance the interests of the composer in retaining control over their work with the interests of the general public in promoting access and creativity. See, e.g., Cherry River Music Co. v. Simitar Entertainment, Inc., 38 F. Supp. 2d 310, 311-12 (S.D.N.Y. 1999). Once a song has been distributed publicly, an individual may bypass the composition copyright owner and obtain a compulsory mechanical license by simply providing notice of the intended use and payment of a statutory royalty. 17 U.S.C. § 115. If the party reproducing the song does not abide by the procedures of § 115, however, no compulsory license may be granted and the party may be liable for infringement if he has not secured a negotiated license. 17 U.S.C. § 115(b)(1); see also Cherry River Music, 38 F. Supp. 2d at 312.

B. <u>Relevance</u>

Courts have "the authority to confine discovery to the claims and defenses asserted in the pleadings" and parties are not entitled to use discovery "to develop new claims or defenses." Fed. R. Civ. P. 26(b)(1), advisory committee note to 2000 amendment. Taking the depositions of the foreign Suppliers is relevant to class certification, according to the plaintiff, because it will help establish the Suppliers' common practice regarding licensing and therefore be applicable to all copyright owners whose songs are distributed by the Suppliers. (Pl. Memo. at 16). The defendants contend that the proposed letters rogatory are in violation of my prior discovery orders and that two of the proposed deposition topics fall outside the claims pleaded in the Amended Complaint. (Defendants' Opposition to Plaintiff's Motion for Letter of Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on Taking of Evidence Abroad in Civil or Criminal Matters ("Def. Memo.") at 7-11).

1. <u>Prior Court Orders</u>

On two previous occasions, I denied the plaintiff's requests to seek discovery regarding exportation and actions relating to customers outside of the United States. (Order dated Nov. 20, 2013; Order dated Jan. 31, 2014). Indeed, "[i]t is well

established that copyright laws generally do not have extraterritorial application." Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d 67, 73 (2d Cir. 1988). However, the defendants' argument that I have ruled that all extraterritorial discovery is out of bounds.

The proposed letters rogatory are distinguishable from the prior requests. Here, the plaintiff seeks to depose certain entities concerning digital recordings that are distributed through the Retailer Defendants' U.S. online music stores, despite being uploaded abroad. Thus, the locus of the allegedly infringing action remains in the United States. Further, the testimony may support the plaintiff's claims of commonality. The plaintiff's allegations center on a purported systemic failure by the defendants to ensure that the recordings offered for sale by the Retailer Defendants had all necessary licenses and authorizations. (Am. Compl., ¶¶ 77, 91-92, 94). The defendants assert the affirmative defense that all such authorizations were obtained. (Google Inc.'s Answer to First Amended Class Action Complaint at 24; Answer of Defendant Apple Inc. to First Amended Class Action Complaint at 21; Answer of Defendant EMusic.com Inc. to First Amended Class Action Complaint at 24; Answer of Defendant Microsoft Corporation to First Amended Class Action Complaint at 25; Answer of Defendant Amazon.com Inc. to First Amended Class Action

15

Complaint at 24; Answer of Defendant Orchard Enterprises NY, Inc. to First Amended Class Action Complaint at 25; Answer of Defendant The Orchard Enterprises, Inc. to First Amended Class Action Complaint at 25).   Evidence demonstrating the practice of foreign labels and aggregators in obtaining rights to the recordings that they supply to the Retailer Defendants is central to that defense. Finally, as the plaintiff notes, defense counsel appear to have contemplated the deposition of foreign labels and aggregators in the November 19, 2013 hearing and conceded that deposing a sample of five "should be fine" to determine the existence any "common thread" with respect to the failure to obtain the requisite licenses, at least for the purposes of class certification. (Transcript of Proceedings dated Nov. 19, 2013, attached as Exh. A to Letter of Gabrielle Levin dated Jan. 20, 2014, at 44).

### 2. Scope of Operative Complaint

#### i. Duplication

The plaintiff seeks to depose the Suppliers on whether they had authorization to duplicate sound recordings. (Proposed Letters Rogatory at 9).  The defendants object that, as both the plaintiff and the proposed class are made up of copyright owners of compositions and not of sound recordings, such questions are outside the bounds of the Amended Complaint.  (Def. Memo. at 8).

Under federal copyright law, compositions and sound recordings

16

are different works, each with distinct ownership rights. Palladium Music, Inc. v. EatSleepMusic, Inc., 398 F.3d 1193, 1197 n.3 (10th Cir. 2005); In re Cellco Partnership, 663 F. Supp. 2d at 368. Copyright owners of sound recordings have the exclusive right to duplicate that sound recording. 17 U.S.C. § 114(b). In order to enjoy that right, however, the sound recording itself must be lawfully fixed. See 17 U.S.C. § 103(a) (providing that copyright in derivative works "does not extend to any part of the work in which [pre-existing] material has been used unlawfully"); Palladium Music, 398 F.3d at 1200 (finding no valid copyright in recordings where party failed to obtain compulsory or consensual licenses from copyright owners of underlying musical compositions). Therefore, while copyright owners of sound recordings do indeed have distinct ownership rights from those of copyright owners in compositions, the former cannot be had without authorization from the latter.

In order to lawfully duplicate a sound recording, the duplicator must obtain authorization from the copyright holder of the sound recording, who must in turn have acquired either a mechanical or negotiated license for the underlying composition. 17 U.S.C. §§ 114, 115(a). The language in the plaintiff's request is taken from the text of § 115(a), which governs the compulsory licensing process for non-dramatic musical compositions. No compulsory license in the underlying composition may be granted

unless two conditions are fulfilled: (1) the sound recording was fixed lawfully; and (2) the making of the duplication was authorized by the copyright owner of the sound recording or, "if the sound recording was fixed before February 15, 1972, by any person who fixed the sound recording pursuant to an express license from the owner of the copyright in the musical work or pursuant to a valid compulsory license for use of such work in a sound recording." 17 U.S.C. § 115(a)(1).  Thus, although the claims in the Amended Complaint are tied solely to infringement of compositions, whether the Suppliers duplicated recordings without authorization from the copyright holder of the sound recording is critical to determining whether a compulsory license in the underlying composition is even available.

The defendants also oppose any questions regarding duplication on the grounds that duplication of sound recordings fixed before 1963 is lawful. (Def. Memo. at 9).  While it is true that federal copyright law extended its protection to sound recordings only in 1972, and only on a prospective basis, see 17 U.S.C. § 301(c), some pre-1972 recordings are nonetheless shielded from infringement.  In the United States, recordings fixed prior to 1972 may be protected by state common law copyright until 2067.  17 U.S.C. § 301(c); see also Capitol Records, Inc. v. Naxos of America, Inc., 4 N.Y.3d 540, 562-63, 797 N.Y.S.2d 352, 367 (2005) (holding that New York's

18

common-law protection for pre-1972 recordings continues until federal preemption occurs); N.Y. Penal Law § 275.25 (unauthorized distribution of pre-1972 sound recordings prohibited). Therefore, even absent federal copyright protection, the Supplier is not freed of any obligation to seek authorization from the individual holding rights to the recording. To the extent that the sound recordings provided by the Suppliers are duplications of pre-1972 recordings, state common law provides the basis for determining whether the recording was legally duplicated. See Arista Records LLC v. Lime Group LLC, 784 F. Supp. 2d 398, 436 (S.D.N.Y. 2011) (noting that pre-1972 recordings "are protected by state common law on copyright infringement"). Federal copyright law further provides that a compulsory license in the underlying composition may not issue unless, for sound recordings fixed prior to 1972, the duplicator obtains authorization from the "person who fixed the sound recording," who must themselves have had authorization for the copyright owner of the of the underlying composition. 17 U.S.C. § 115(a)(1). Thus, there is no reason at this point to distinguish between pre- and post-1963 recordings.

ii. Importation

The Copyright Act contains specific provisions governing infringing importation and exportation of sound recordings. 17 U.S.C. § 602. Importation without authorization is infringement of

19

a copyright owner's exclusive right to distribution.  17 U.S.C. §
602(a)(1); <u>see also</u> <u>U2 Home Entertainment, Inc. V. Lai Ying Music</u>
<u>& Video Trading, Inc.</u>, No. 04 Civ. 1233, 2005 WL 1231645, at *4 &
n.8 (S.D.N.Y. May 25, 2005), <u>aff'd in part, vacated in part sub</u>
<u>nom.</u> <u>U2 Home Entertainment, Inc. v. Wei Ping Yuan</u>, 245 F. App'x 28
(2d Cir. 2007).

The defendants argue that the Amended Complaint contains no
reference to importing or exporting, nor does it invoke the
protection of 17 U.S.C. § 602, and that the plaintiff conceded this
point in the November 19, 2013 hearing.  (Def. Memo. at 3-4).
Importation is nonetheless relevant to the plaintiff's current
claims.  In the Amended Complaint, the plaintiff alleges that the
Retailer Defendants "accept [and offer for sale] virtually every
recording delivered to them," which, combined with reference to
popular songs being "recorded by innumerable artists all over the
world," makes the question of import authorization relevant to the
defendants' affirmative defenses.  (Am. Compl., ¶¶ 59, 83, 92).
For example, songs may be licensed to one entity for reproduction
and distribution in a foreign country and licensed to another in
the United States.  The recordings distributed by the first entity
are lawfully fixed and distributed within that foreign country but
would be considered infringing if they were directly imported into
the United States.  <u>See</u> <u>Kirtsaeng v. John Wiley & Sons, Inc.</u>, __

U.S. \_\_, \_\_, 133 S. Ct. 1351, 1368 (2013) (noting that § 602(a)(1) forbids unauthorized importing of phonorecords lawfully made abroad, so long as there has been no prior sale abroad); see also Capitol Records, LLC v. ReDigi Inc., 934 F. Supp. 2d 640, 655-56 (S.D.N.Y. 2013) (finding that the prior sale defense does not apply to digital music files sold online). Therefore, while the defendants assert the affirmative defense that they have all necessary authorizations for the sound recordings they provide, such authorization may be dependent upon whether the recordings are imported into the United States.

C. Burden

The defendants also assert that taking six depositions abroad, five in the United Kingdom and one in France, imposes an unwarranted burden and is unnecessary for class certification. (Def. Memo. at 11-12). While the court has discretion to deny discovery requests where the burden outweighs the likely benefit, Fed. R. Civ. P. 26(b)(2)(C)(iii), parties opposing discovery must supply specific evidence demonstrating the nature of the burden. See Nunez v. City of New York, No. 11 Civ. 5845, 2013 WL 2149869, at *3 (S.D.N.Y. May 17, 2013); Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984) (the party objecting to discovery must offer "evidence revealing the nature of the burden"). Other than noting

"significant expenses" associated with foreign depositions and the possibility of "significant delays," the defendants make no showing of undue burden. (Def. Memo. at 11). Further, some of these costs may be alleviated by allowing defendants' counsel to appear telephonically. Although "obtaining evidence through the Hague Convention and letters rogatory [can be] cumbersome and inefficient," <u>Rabbi Jacob Joseph School v. Allied Irish Banks, PLC</u>, No. 11 CV 5801, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012) (collecting cases), on the whole, the defendants' general arguments as to burden do not outweigh the probable benefit of these depositions, which are likely to assist in establishing the elements of class certification.

<u>Conclusion</u>

For the reasons articulated above, I will issue the letters rogatory seeking the assistance of the British and French courts in taking deposition testimony upon oral examination of the specified third-party witnesses.


SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE


22

Dated: New York, New York
       March 31, 2014

Copies mailed this date:

Matthew T. Schwartz, Esq.
Brian S. Levenson, Esq.
Schwartz & Ponterio, PLLC
134 W. 29th St.
New York, NY 10128

Jason L. Solotaroff, Esq.
Oren Giskan, Esq.
Giskan, Solotaroff & Anderson, LLP
11 Broadway
Suite 2150
New York, NY 10004

Kenneth L. Steinthal, Esq.
Joseph R. Wetzel, Jr., Esq.
King & Spalding LLP
101 2nd St., Suite 2300
San Francisco, CA 94105

A. John P. Mancini, Esq.
Alison K. Levine, Esq.
Matthew D. Ingber, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019

Vera Ranieri, Esq.
Greenberg Traurig LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111

Gabrielle Levin, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 48th Floor
New York, NY 10166-0193

Gail E. Lees, Esq.
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197