UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
NORMAN BLAGMAN, individually and  : 12 Civ. 5453 (ALC) (JCF)
on behalf of all others similarly :
situated,                          :        MEMORANDUM
                                   :        AND  ORDER
                                   :
            Plaintiff,             :
                                   :
      - against -                  :
                                   :
APPLE, INC., AMAZON.COM, INC.,     :
GOOGLE, INC., MICROSOFT            :
CORPORATION, EMUSIC.COM INC., THE  :
ORCHARD ENTERPRISES, INC., ORCHARD :
ENTERPRISES NY, INC., and JOHN DOES:
1-10, persons and entities whose   :
identities are unknown to plaintiff:
but who have performed and         :
participated in the unlawful acts  :
alleged herein,                    :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     The plaintiff, Norman Blagman, has moved, pursuant to Rule

15(a)(2) of the Federal Rules of Civil Procedure, for leave to file

a second amended complaint.  For the following reasons, the motion

is granted.

Background

     Mr. Blagman brings this action individually and on behalf of

a proposed class, alleging that the defendants -- Apple Inc.,

Amazon.com, Inc., Google Inc., eMusic.com Inc., Microsoft

Corporation, The Orchard Enterprises, Inc., and Orchard Enterprises

1

NY, Inc. -- illegally reproduced and distributed musical works without acquiring licenses for the underlying compositions. (Amended Complaint ("Am. Compl."), ¶¶ 1-8, 51-52). This alleged systemic failure to secure proper licensing occurs in a two-step process. First, certain record labels and aggregators, including defendant Orchard Enterprises, collect digital recordings and supply them to digital music stores. (Am. Compl., ¶¶ 84, 99-111). The defendants Amazon, Apple, Emusic, Google, and Microsoft (the "Retailer Defendants"), who make up almost the whole of the U.S. digital music industry, acquire these songs from the aggregators and offer them for sale in their online music stores. (Am. Compl., ¶¶ 14-18, 87-98). According to the Amended Complaint, neither the labels and aggregators who collect and upload recordings to the U.S.-based online stores run by the Retailer Defendants, nor the Retailer Defendants themselves, ensure that the recordings sold to consumers are properly licensed. (Am. Compl., ¶¶ 42-48, 51-52, 91-92, 94, 100, 103-104).

The plaintiff filed his original complaint in July 2012. Three months later, he submitted an Amended Complaint, identifying a class that includes"[a]ll persons or entities who own all or part of one or more registered copyrighted musical compositions that have been reproduced, distributed, or sold by Defendants." (Am. Compl., ¶ 52). On October 26, 2012, the defendants filed a motion

to dismiss and to strike the class allegations, and discovery was stayed pending a decision on the motion.  The Honorable Andrew L. Carter, U.S.D.J., denied the defendants' motion on May 20, 2013, and lifted the stay.  Blagman v. Apple Inc., No. 12 Civ. 5453, 2013 WL 2181709, at *8 (S.D.N.Y. May 20, 2013).

The plaintiff now requests leave to file a second amended complaint, "narrow[ing] the scope of the class significantly," adding "more specific allegations" as to the infringing conduct, and including two separate claims for unauthorized importation and exportation under § 602 of the Copyright Act.  (Plaintiff's Memorandum of Law in Support of Motion for Leave to File Second Amended Complaint ("Pl. Memo.") at 1).  The amendment changes the current class definition by limiting the class to composition copyright holders whose songs were provided to the Retailer Defendants by 69 allegedly "unlawful" record labels.  (Second Amended Class Action Complaint and Demand for Jury Trial ("2d Am. Compl."), attached as Exh. A to Declaration of Jason L. Solotaroff dated March 4, 2014, ¶ 58; Pl. Memo. at 1, 3).  The addition of § 602 claims is in response to my ruling on November 19, 2013, precluding discovery into extraterritorial sales because import and export claims were not specifically included in the Amended Complaint.  (Order dated Nov. 20, 2013; Pl. Memo. at 1).  The defendants oppose the motion, contending that it is untimely,

3

prejudicial, and ultimately futile.   (Defendants' Opposition to
Plaintiff's Motion for Leave to File Second Amended Complaint
("Def. Memo.") at 7-19).   They characterize the proposed complaint
as adding four new theories of infringement and dramatically
changing the class definition.   (Def. Memo. at 1).   Specifically,
these new methods of infringement include "pirating" recordings,
providing defective compulsory license notices, and importing and
exporting infringing works.   (Def. Memo. at 5).

Discussion

    Rule 15 of the Federal Rules of Civil Procedure provides that
courts should "freely give" leave to amend "when justice so
requires."  Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371
U.S. 178, 182 (1962); Aetna Casualty & Surety Co. v. Aniero
Concrete Co., 404 F.3d 566, 603-04 (2d Cir. 2005).   The Second
Circuit has stated that "[t]his permissive standard is consistent
with our strong preference for resolving disputes on the merits."
Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011)
(internal quotation marks omitted).   Motions to amend should
therefore by denied only for reasons of undue delay, bad faith or
dilatory motive, undue prejudice to the non-moving party, or
futility.   See Burch v. Pioneer Credit Recovery, Inc., 551 F.3d
122, 126 (2d Cir. 2008) (citing Foman, 371 U.S. at 182); McCarthy
v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).   The

4

court has broad discretion over such motions.  See McCarthy, 482 F.3d at 200.

A. Delay

As the Second Circuit has repeatedly recognized, "[m]ere delay, [] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Retirement Board v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); see Parker v. Columbia Pictures Industries, 204 F.3d 326, 339 (2d Cir. 2000); Rotter v. Leahy, 93 F. Supp. 2d 487, 497 (S.D.N.Y. 2000) ("Typically, the moving party's delay, standing alone, is not sufficient reason to foreclose amendment."). Where a significant period of time has passed prior to filing a motion to amend, however, the moving party must provide an explanation for the delay. Zubulake v. UBS Warburg LLC, 231 F.R.D. 159, 162 (S.D.N.Y. 2005).

Here, the defendants argue that the delay is "[u]nconscionable" and unexplained, coming twenty months after the suit was filed and three months after I found that violations of § 602 were not alleged in the Amended Complaint. (Def. Memo. at 6-7). The plaintiff counters that, because discovery was stayed while the motion to dismiss was pending and did not begin until a discovery plan was negotiated in October 2013, the real time period at issue is less than five months. (Plaintiff's Reply Memorandum

5

of Law in Support of Motion for Leave to File Second Amended Complaint ("Reply") at 2-3). Much of the delay, according to the plaintiff, can be attributed to the defendants' "insistence on extensive time-consuming negotiation . . . for every item of discovery." (Reply at 3). The plaintiff attributes the new allegations in the complaint and the refined class definition to information revealed during discovery. (Reply at 6 (contending that discovery enabled identification of the defendant's major suppliers, whose "location, identify and [] extent of involvement . . . were previously unknown")). While the defendants argue that much of the new information does not come from discovery (Def. Memo. at 5, 8-9), "even vague or thin reasons are sufficient, in the absence of prejudice or bad faith." Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 98 (S.D.N.Y. 2010) (internal quotation marks omitted).

To the extent that the defendants claim that Mr. Blagman's delay was strategic (Def. Memo. at 8-9), they provide no showing of bad faith apart from the delay itself. Although the defendants point to the production of agreements with major labels as particular discovery that would have been unnecessary under the newly defined proposed class (Def. Memo. at 11), it is plausible to infer that this discovery was a means to narrow the plaintiff's claims (Reply at 7). And while the plaintiff did delay seeking

leave to amend until after certain scheduled depositions (Reply at 5), he asserts that these depositions were "necessary regardless of the amendment." (Reply at 5).

Finally, courts in this Circuit have routinely granted leave to amend where the delay was much longer than even the twenty months that have elapsed since the plaintiff first filed this lawsuit.  See Commander Oil Corp. v. Barlo Equipment Corp., 215 F.3d 321, 333 (2d Cir. 2000) (no abuse of discretion in grant of leave to amend after seven year delay, in absence of prejudice); Rachman Bag Co. v. Liberty Mutual Insurance Co., 46 F.3d 230, 235 (2d Cir. 1995) (leave to amend properly granted after four-year delay); Block v. First Blood Associates, 988 F.2d 344, 350-51 (2d Cir. 1993) (amendment allowed four years after complaint filed); Margel v. E.G.L. Gem Lab Ltd., No. 04 Civ. 1514, 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (collecting cases).  Because "mere delay is not sufficient evidence of bad faith to merit denial of a motion to amend," Danaher Corp. v. Travelers Indem. Co., No. 10 Civ. 0121, 2013 WL 150027, at *4 (S.D.N.Y. Jan. 10, 2013), and the time period at issue here is not substantial, the defendant must show prejudice in connection with delay to warrant denial of the motion to amend.

B. Undue prejudice

"Prejudice to the opposing party . . . has been described as

7

the most important reason for denying a motion to amend." <u>Frenkel v. New York City Off-Track Betting Corp.</u>, 611 F. Supp. 2d 391, 394 (S.D.N.Y. 2009) (internal quotation marks omitted). However, only <u>undue</u> prejudice justifies denial of leave to amend. <u>See</u> <u>A.V. by Versace, Inc. v. Gianni Versace S.p.A.</u>, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000); <u>see also</u> <u>Oneida Indian Nation of New York State v. County of Oneida</u>, 199 F.R.D. 61, 77 (N.D.N.Y. 2000) (noting where moving party provides explanation for delayed amendment, opposing party must make "greater showing" of prejudice). Prejudice results when the proposed amendment would "'(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" <u>Monahan v. New York City Department of Corrections</u>, 214 F.3d 275, 284 (2d Cir. 2000) (quoting <u>Block</u>, 988 F.2d at 350); <u>Adams v. City of New York</u>, __ F. Supp. 2d __, __, 2014 WL 309640, at *11 (E.D.N.Y. 2014). Whether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to this determination. <u>See</u> <u>Monahan</u>, 214 F.3d at 284. The moving party bears the burden "of demonstrating that substantial prejudice would result were the proposed amendment to be granted." <u>Oneida Indian Nation</u>, 199 F.R.D. at 77 (internal

8

quotation marks omitted); see also ResQNet.com v. Lansa, Inc., 382 F. Supp. 2d 424, 449 (S.D.N.Y. 2005), rev'd on other grounds, 594 F.3d 860 (Fed. Cir. 2010).

Prejudice may arise when a proposed amendment opens the door to substantial expenditures of time and money. Monahan, 214 F.3d at 284. Although the plaintiff asserts that the new import and export claims under § 602 "will not require significant additional discovery," it is clear that this amendment will open previously prohibited areas of discovery. (Pl. Memo. at 2). This may also be true insofar as specific discovery into recording "piracy" and defective compulsory licensing may be warranted. However, "[a]llegations that an amendment will require the expenditure of additional time, effort, or money do not [themselves] constitute undue prejudice." A.V. by Versace, Inc., 87 F. Supp. 2d at 299 (internal quotation marks omitted). An "'adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.'" JPMorgan Chase Bank, N.A. v. IDW Group, LLC, No. 08 Civ. 9116, 2009 WL 1357946, at *4 (S.D.N.Y. May 12, 2009) (quoting United States v. Continental Illinois National Bank & Trust Co. of Chicago, 889 F.2d 1248, 1255 (2d Cir. 1989)); see also Margel, 2010 WL 445192, at *12 (noting that "[t]he prejudice that would flow from any additional required discovery can generally be mitigated by adjustments to the

9

discovery schedule," and collecting cases).

This action has been intensively litigated to date, with corresponding costs incurred by both sides. However, discovery is still underway, and neither a summary judgment briefing schedule nor a trial date has been set. See JPMorgan Chase Bank, 2009 WL 1357946, at *5 (granting motion to amend where no pending dispositive motions or trial date, and "the legal issues raised by the proposed amendment . . . overlap considerably with . . . the original claims."). Therefore, although additional discovery may be warranted, the amendments should not significantly prolong the resolution of the action.

Amending a complaint to add color and detail gleaned from discovery is permissible. See Friedl v. City of New York, 210 F.3d 79, 88 (2d Cir. 2000) (amendment allowed after discovery revealed additional relevant facts); In re Pfizer Inc. Securities Litigation, No. 05 MD 1688, 2012 WL 983548, at *3 (S.D.N.Y. March 22, 2012); Bridgeport Music, Inc. v. Universal Music Group, Inc., 248 F.R.D. 408, 417 (S.D.N.Y. 2008). However, some of what the plaintiff describes as "more specific allegations," (Pl. Memo. at 1), the defendants consider to be new theories of infringement requiring additional discovery (Def. Memo. at 2, 5 & n.6). In particular, the defendants contend that the plaintiff is for the first time asserting infringement by means of pirated sound

recordings and defective compulsory licenses.   (Def. Memo. at 5 & n.6).

Although these are new methods of infringement, they are closely related to the plaintiff's original claims.   Indeed, the essence of the plaintiff's claim remains the same, which is that the defendants infringe on copyrights by failing to ensure that the recordings they offer for sale are properly licensed.   See Haddock v. Nationwide Financial Services Inc., 514 F. Supp. 2d 267, 271 (D. Conn. 2007) (allowing amendment where plaintiff's legal theory of the case "simply evolved throughout the course of discovery" and new claim was "merely a variation" on previous claims); Naylor v. Rotech Healthcare, Inc., 679 F. Supp. 2d 505, 509 (D. Vt. 2009). "The fact that a proposed amendment would add new issues is normally not prejudicial unless the opposing party would be confronted with some unique difficulty in defending against the new issues." Duling, 265 F.R.D. at 102; see also Taberna Capital Management, LLC v. Jaggi, No. 08 Civ. 11355, 2010 WL 1424002, at *2 (S.D.N.Y. April 9, 2010) (allowing amendment that arguably "adds new legal theories and is likely to expand the scope of discovery significantly" where defendant did not demonstrate "this would prejudice his ability to carry out his defense").   Under these circumstances, and given Rule 15(a)'s liberal standard, the defendants cannot show undue prejudice.

C. Futility

Leave to amend may also be denied as futile when the pleading would not survive a motion to dismiss.  See AEP Energy Services Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010); Slay v. Target Corp., No. 11 Civ. 2704, 2011 WL 3278918, at *2 (S.D.N.Y. July 20, 2011) ("Futility generally turns on whether the proposed amended pleading states a viable claim."); Penn Group, LLC v. Slater, No. 07 Civ. 729, 2007 WL 2020099, at *4 (S.D.N.Y. June 13, 2007) (collecting cases).  Under this standard, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (alteration in original) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  The opposing party must establish that granting leave to amend would be futile.  Sotheby's, Inc. v. Minor, No. 08 Civ. 7694, 2009 WL 3444887, at *3 (S.D.N.Y. Oct. 26, 2009); ResQNet.com, 382 F. Supp. 2d at 449.  The defendants contend that the proposed amendment would be futile because the allegation of unauthorized importation fails to state a claim and because the proposed class cannot be certified.

1. Unauthorized Importation Claims under Section 602

The defendants allege that the unauthorized importation claims must fail because the plaintiff has not alleged that the

phonorecords at issue were "acquired outside the United States."
17 U.S.C. § 602(a)(1); (Def. Memo. at 12). However, in addition
to expressly alleging unauthorized importation and exportation, the
Proposed Amended Complaint also contains specific factual
allegations concerning certain labels operating outside of the
United States. (2d Am. Compl., ¶¶ 140, 142, 144-155). According
to the Proposed Amended Complaint, these foreign labels do not have
import authorization to sell digital music in the Retailer
Defendants' online U.S. music stores, yet do so. (2d Am. Compl.,
¶¶ 142, 147, 151). These allegations are sufficient to support a
plausible inference that the defendants violated § 602 through
unauthorized importation.

   2. Class Certification

   Although the futility inquiry is generally focused on whether
the proposed amendments fail to state a claim, when proposing to
amend class allegations, courts instead evaluate whether the
amendment "will enhance the likelihood of class certification."
Duling, 265 F.R.D. at 104 n.6; Pierre v. JC Penney Co., Inc., No.
03-CV-4782, 2006 WL 407553, at *6 (E.D.N.Y. Feb. 21, 2006) ("[I]f
after viewing the amendment in the light most favorable to the
plaintiff, the court finds the proposed class cannot be certified
under Rule 23, leave to amend will be denied."). But see In re
LIBOR-Based Financial Instruments Antitrust Litigation, 962 F.

Supp. 2d 606, 634-35 (S.D.N.Y. 2013) (finding "the propriety of class treatment" not relevant at pre-certification motion to amend stage).  The defendants urge the Court to apply this standard to the current motion (Def. Memo. at 12-13), while the plaintiff counters that such analysis would be premature, as discovery has yet to end  (Reply at 9).

Judge Carter's prior determination that the class allegations are sufficient to withstand a motion to dismiss is the law of the case.  Blaqman, 2013 WL 2181709, at *5-7.  Leave to amend should therefore be denied for futility only where "the proposed amendment would, on its face, violate class action requirements." Feldman v. Lifton, 64 F.R.D. 539, 543 (S.D.N.Y. 1974); see Calibuso v. Bank of America Corp., 893 F. Supp. 2d 374, 386 (E.D.N.Y. 2012) ("[G]iven the existence of a plausible claim based upon the pleadings, defendants' motion is premature in this case, and plaintiffs should be given an opportunity to set forth their proof of commonality at the class certification stage."); Academy of Ambulatory Foot Surgery (AAFS) v. American Podiatry Association, 516 F. Supp. 378, 383 (S.D.N.Y. 1981) (allowing pre-certification amendment changing class definition because defendants' arguments against certification were "more appropriately addressed in the context of motions to certify the proposed classes").

"[T]he court's inquiry into the class action requirements at

the pleading amendment stage[] is limited." Hallmark v. Cohen & Slamowitz, LLP, 283 F.R.D. 136, 141 (W.D.N.Y. 2012). Although pre-certification motions to amend have been denied as unlikely to succeed in certification, see Presser v. Key Food Stores Coop., Inc., 218 F.R.D. 53, 57 (E.D.N.Y. 2003) (denying in part motion to amend to convert individual claim into class action), such amendments are generally rejected only where they fail to overcome deficiencies already identified in a class certification motion, see, e.g., Orthocraft, Inc. v. Sprint Spectrum L.P., No. 98-CV-5007, 2002 WL 31640477, at *2 (E.D.N.Y. Nov. 16, 2002); Luedke v. Delta Air Lines, Inc., No. 92 Civ. 1778, 1993 WL 313577, at *4 (S.D.N.Y. Aug. 10, 1993). Here, by contrast, the plaintiff's class claims have survived a motion to strike and a motion to dismiss. The only reason that determination is not fully dispositive is that it applied a standard slightly different from that applicable on a motion to amend.

    a. Standing

    The proposed amendment limits the class to composition copyright holders whose works were provided to the Retailer Defendants by 69 identified labels and aggregators.  This revised definition, which is narrower than the current putative class, does not disturb Judge Carter's previous determination on standing. Blagman, 2013 WL 2181709, at *5-6.

b. <u>Requirements of Rule 23</u>

Although Judge Carter's opinion denied the defendants' motion to dismiss the class claims, it did so based on the substantive sufficiency of those claims; that opinion did not specifically address the Rule 23 factors.  Rule 23(a) of the Federal Rules of Civil Procedure sets forth a four-part test for certifying a class: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  <u>See</u> Fed. R. Civ. P. 23(a)(1)-(4); <u>see also</u> <u>Teamsters Local 445 Freight Division Pension Fund v. Bombardier</u> <u>Inc.</u>, 546 F.3d 196, 201-02 (2d Cir. 2008) ("In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a) . . . .").  In addition to establishing numerosity, commonality, typicality, and adequacy, the class claims must also satisfy the requirements of one of the three subsections of Rule 23(b).  Fed. R. Civ. P. 23(b); <u>see</u> <u>Brown v. Kelly</u>, 609 F.3d 467, 476 (2d Cir. 2010).  Rule 23(b)(3) allows a class to proceed only where "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [] a class

16

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In addition to these tests, "courts in this district have also grafted an implicit 'ascertainability requirement' upon the certification process." Flores v. Anjost Corp., 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (collecting cases); see Enea v. Bloomberg, L.P., No. 12 Civ. 4656, 2014 WL 1044027, at *3 (S.D.N.Y. March 17, 2014) (describing "implicit requirement of class 'definiteness and ascertainability'"). The ascertainability requirement is intended to ensure that "the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." Stinson v. City of New York, 282 F.R.D. 360, 373 (S.D.N.Y. 2012) (internal quotation marks omitted). The defendants challenge the viability of the class, alleging that it is unascertainable and fails to satisfy the commonality and predominance requirements of Rule 23.[1] (Def. Memo.

---

[1] The defendants also contest, in a footnote, whether the plaintiff can meet the typicality and adequacy requirements of Rule 23(a). (Def. Memo. at 16 n.12). Because Mr. Blagman's copyrighted works were created before 1978, they are governed by the Copyright Act of 1909 and not the Copyright Act of 1976. See Silverman v. CBS Inc., 632 F. Supp. 1344, 1349-50 (S.D.N.Y. 1986) ("The requirements for, and duration of, copyright protection vary, depending on the law in effect when a work was created."), aff'd in part, vacated in part on other grounds, 870 F.2d 40 (2d Cir. 1989). Depending on when the majority of putative class members created

at 15-19).

The requirement of commonality ensures that class members'
claims "share a common question of law or fact." Cohen v. J.P.
Morgan Chase & Co., 262 F.R.D. 153, 158 (E.D.N.Y. 2009); In re
IndyMac Mortgage-Backed Securities Litigation, 286 F.R.D. 226, 233
(S.D.N.Y. 2012). "The commonality standard does not mandate that
the claims of the lead plaintiff be identical to those of all other
plaintiffs," but does "require[ ] that plaintiffs identify some
unifying thread among the members' claims that warrant[s] class
treatment." Kowalski v. Yellowpages.com, No. 10 Civ. 7318, 2012 WL
1097350, at *13 (S.D.N.Y. March 31, 2012) (second alteration in
original) (internal quotation marks omitted). Therefore, "[a]
court may find a common issue of law even though there exists
'some factual variation among class members' specific grievances
. . . .'" Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 37
(E.D.N.Y. 2008) (quoting In re Playmobil Antitrust Litigation, 35
F. Supp. 2d 231, 240 (E.D.N.Y. 1998)).

The predominance inquiry imposed by Rule 23(b)(3) of the
Federal Rules of Civil Procedure "'tests whether proposed classes
are sufficiently cohesive to warrant adjudication by

---

their works, this may undermine the connection between Mr.
Blagman's individual claims and the class claims. However, because
this argument is hypothetical until there is further clarity on the
actual make-up of the class, I decline to address it.

representation.'" In re Nassau County Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006) (quoting In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 136 (2d Cir. 2001)); accord Jackson v. Bloomberg, L.P., __ F.R.D. __, __, 2014 WL 1088001, at *11 (S.D.N.Y. 2014). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002); see Kottler v. Deutsche Bank AG, No. 05 Civ. 7773, 2010 WL 1221809, at *3 (S.D.N.Y. March 29, 2010) (requiring plaintiff show that "common proof will predominate at trial with respect to the essential elements of liability of the underlying causes of action" (internal quotation marks omitted)). The plaintiff is also required to show that damages may be calculated "consistent with the classwide theory of liability and [are therefore] capable of measurement on a classwide basis." In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d 108, 123 n.8 (2d Cir. 2013). The predominance requirement is related to commonality, but "is a more demanding criterion." Moore, 306 F.3d at 1252; see New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc., No. 08 Civ. 5653, 2014 WL 1013835, at *8 (S.D.N.Y. March 17, 2014).

The defendants argue that, because the plaintiff provides a variety of ways through which the defendants allegedly infringe the class members' works, individualized inquiry into both the infringing conduct and the resulting damages will be necessary. (Def. Memo. at 17-18).  Mr. Blagman responds that these arguments are premature in light of ongoing discovery.  (Reply at 9).  He further asserts that, as revealed by deposition testimony, common answers will apply to entire swaths of compositions on a label-by-label basis, therefore satisfying the commonality and predominance requirements. (Reply at 10 ("The recordings embodying the compositions at issue did not arrive in the Defendants' stores one by one; deposition testimony establishes that they were provided en masse, thousands at a time, by labels that violate the law in the same way.")).

Mr. Blagman's individual claims are based on the same underlying legal theory as the proposed class and arise from the same course of conduct, which is the alleged systemic failure of the defendants to ensure that the songs sold in their online music stores were appropriately licensed.  It is likely that there will be some variation in how and whether infringement occurred, but "'[a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification

20

under Rule 23(b)(3).'" _In re Visa Check/MasterMoney Antitrust Litigation_, 280 F.3d at 139 (alterations in original) (quoting _Waste Management Holdings v. Mowbray_, 208 F.3d 288, 296 (1st Cir. 2000)). Mr. Blagman also asserts that there will be common determinations of liability, at least on a label-wide basis. (Reply at 10). Given the limited inquiry to be undertaken at this stage, and the possibility that theories of liability may be limited at the certification stage to only those capable of classwide proof, there is a reasonable likelihood of certification. Although the defendants have highlighted serious issues that may indeed capsize the plaintiff's class allegations, these arguments are more appropriately weighed in the context of a class certification motion.

The defendants also assert that the class is not properly ascertainable because determining the membership of the proposed class would require the Court to engage in several fact-intensive, individualized inquiries. (Def. Memo. at 15). All of the recordings provided by the 69 identified labels and distributed by the defendants would have to be compared and potentially matched to the compositions registered with the Copyright Office. (Def. Memo. at 15). This would necessarily entail an individualized inquiry, as "many songs" are recorded with titles that differ from the title of the underlying copyrighted composition. (Def. Memo. at 15).

After determining which phonorecords embodied registered, copyrighted compositions, the owner of the copyright would have to be identified.  As example of the complications that might arise, the defendants point to the evolution in ownership rights of one of Mr. Blagman's compositions referenced in the Amended Complaint ("It'll Never Be Over For Me").  (Def. Memo. at 16).  The plaintiff counters that copyright holders can be easily identified through the use of database services used to obtain licensing.  (Reply at 10).

In any event, the ascertainability requirement "is designed only to prevent the certification of a class whose membership is truly indeterminable."  Gortat v. Capala Brothers, Inc., No. 07-CV-3629, 2010 WL 1423018, at *2 (E.D.N.Y. April 9, 2010).  In light of this standard, and because this determination is best suited for a motion for class certification, the class definition may be amended notwithstanding the defendants' concerns regarding ascertainability.  See Noble v. 93 University Place Corp., 224 F.R.D. 330, 338 (S.D.N.Y. 2004) ("Class members need not be ascertained prior to certification, but must be ascertainable at some point in the case.").

Conclusion

For the foregoing reasons, the plaintiff's motion to file a second amended complaint (Docket no. 111) is granted.

22

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           May 19, 2014

Copies mailed this date to:

Matthew T. Schwartz, Esq.
Brian S. Levenson, Esq.
Schwartz & Ponterio, PLLC
134 W. 29th St.
New York, NY 10128

Jason L. Solotaroff, Esq.
Oren Giskan, Esq.
Giskan, Solotaroff & Anderson, LLP
11 Broadway
Suite 2150
New York, NY 10004

Kenneth L. Steinthal, Esq.
Joseph R. Wetzel, Jr., Esq.
King & Spalding LLP
101 2nd St., Suite 2300
San Francisco, CA 94105

Mary K. Bates, Esq.
King & Spalding LLP
1180 Peachtree St., NE
Atlanta, GA 30309

A. John P. Mancini, Esq.
Alison K. Levine, Esq.
Matthew D. Ingber, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019

23

Vera Ranieri, Esq.
Greenberg Traurig LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111

Gabrielle Levin, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 48th Floor
New York, NY 10166-0193

Gail E. Lees, Esq.
Scott A. Edelman, Esq.
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197