UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - :
NORMAN BLAGMAN, individually and    :    12 Civ. 5453 (ALC) (JCF)
on behalf of all others similarly   :
situated,                           :         MEMORANDUM
                                    :         AND  ORDER
                                    :
              Plaintiff,            :
                                    :
     - against -                    :
                                    :
APPLE, INC., AMAZON.COM, INC.,      :
GOOGLE, INC., MICROSOFT             :
CORPORATION, EMUSIC.COM INC., THE   :
ORCHARD ENTERPRISES, INC., ORCHARD  :
ENTERPRISES NY, INC., and JOHN DOES :
1-10, persons and entities whose    :
identities are unknown to plaintiff :
but who have performed and          :
participated in the unlawful acts   :
alleged herein,                     :
                                    :
              Defendants.           :
- - - - - - - - - - - - - - - - - - :
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Plaintiff Norman Blagman has moved pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure for leave to file his third amended complaint. For the following reasons, the motion is granted.

Background

According to the operative complaint in this putative class action, "the digital music business consists of four groups." (Second Amended Complaint ("2nd Am. Compl."), ¶ 87). The artists -- composers and lyricists -- generally own the copyrights in the

1

musical compositions they create; record labels generally own the copyright in the sound recordings of the artists' compositions; "aggregators" acquire digital distribution rights from record labels and upload the digital recordings to online music stores; and digital music retailers sell the recordings online. (2nd Am. Compl., ¶¶ 65, 87). Defendants Apple, Inc., Amazon.com, Inc., Google, Inc., Microsoft Corp., and eMusic.com Inc. (the "Retailer Defendants") "own and operate the largest digital music retail stores in the world." (2nd Am. Compl., ¶ 3). Defendants The Orchard Enterprises, Inc., and Orchard Enterprises NY, Inc. ("Orchard") are aggregators who "act as the middlemen between the Retailer Defendants and the record labels." (2nd Am. Compl., ¶ 4). Mr. Blagman alleges that the defendants, without acquiring the necessary licenses or permissions, "have all imported, exported, reproduced, distributed, and sold . . . digital recordings" of certain compositions (he has identified three) for which he owns the copyright. (2nd Am. Compl., ¶¶ 46-53).

> The [d]efendants' failure to properly license the music
> they sell derives from two factors: (a) the Retailer
> Defendants accept virtually all digital music content
> from their suppliers without adequately screening the
> content for unlicensed music or the suppliers for
> unlawful conduct; and (b) the [d]efendants take no direct
> action to obtain or confirm licenses for the music they
> distribute and sell and instead rely on their suppliers
> to perform this vital function.

(2nd Am. Compl., ¶ 7). The plaintiff further asserts that the

2

defendants "have [] willfully infringed at least thousands of other copyrighted compositions in the same manner."  (2nd Am. Compl., ¶ 57).

The first amended complaint -- which was filed in October 2012, three months after the original complaint -- identified a "class that includes '[a]ll persons or entities who own all or part of one or more registered copyrighted musical compositions that have been reproduced, distributed, or sold by Defendants." Blaqman v. Apple, Inc., No. 12 Civ. 5453, 2014 WL 2106489, at *1 (S.D.N.Y. May 19, 2014) (quoting Amended Complaint, ¶ 52) ("Blaqman II"). The Honorable Andrew L. Carter, U.S.D.J., denied the defendants' motions to dismiss that complaint and to strike the class allegations.  Blaqman v. Apple, Inc., No. 12 Civ. 5453, 2013 WL 2181709, at *8 (S.D.N.Y. May 20, 2013) ("Blaqman I"). Approximately nine-and-one-half months later, the plaintiff moved to amend his complaint in order to, among other things, "narrow[] the scope of the class" by limiting it "to composition copyright holders whose songs were provided to the Retailer Defendants by 69 allegedly unlawful record labels," which were identified on two exhibits attached to the proposed complaint. Blaqman II, 2014 WL 2106489, at *1 (internal quotation marks omitted); (Orchard Label List, attached as Exh. A to 2nd Am. Compl.; Non-Orchard Label List, attached as Exh. B to 2nd Am. Compl.).  Specifically, the class was

3

described in the proposed complaint as

> [t]he legal and/or beneficial owners of all or part of
> one or more US registered copyrighted musical
> compositions that have been reproduced, distributed,
> sold, imported, or exported by the Retailer Defendants
> and that were supplied to the Retailer Defendants: (a) by
> Orchard on behalf of the record labels and aggregators
> listed on the Orchard Label List annexed as Exhibit A;
> and (b) by the record labels and aggregators listed on
> the Non-Orchard Label List annexed as Exhibit B.[1]

(2nd Am. Compl., ¶ 58).  I granted the application in May 2014.

Blaqman II, 2014 WL 2106489, at *1, *9.

As class discovery continued, a disagreement as to the meaning

of the class definition emerged.  The defendants argued that the

putative class consisted of copyright owners whose compositions

> have been subjected to two actions.  First, they must
> have been "reproduced, distributed, sold, imported, or
> exported by the Retailer Defendants."  Second, they must
> have been either (a) "supplied to the Retailer Defendants
> . . . by [] Orchard, on behalf of the record labels and
> aggregators listed on the Orchard Label List annexed as
> Exhibit A," or (b) "supplied to the Retailer Defendants
> . . . by the record labels and aggregators listed on the
> Non-Orchard Label List annexed as Exhibit B."  Therefore,
> to be implicated by the class,  the content must have
> been supplied to a Retailer Defendant by Orchard on
> behalf of one of the entities listed in Exhibit A or by
> one of the entities on Exhibit B . . . .

(Letter of Gabrielle Levin dated Nov. 14, 2014, at 6 (first and

third alterations in original) (citations omitted) (quoting 2nd Am.

---

[1] There may be some imprecision in this class definition, as
it appears that the relevant exhibits list only record labels and
not aggregators.

4

Compl., ¶ 58)).   The plaintiff disagreed, contending that the defendants "read into the class definition the word 'directly,' which is plainly not there. . . .   Whether the labels listed in the Exhibits to the Second Amended Complaint supplied their tracks directly, or . . . through an aggregator[] is not relevant to their inclusion in the [c]lass." (Letter of Oren Giskan dated Nov. 14, 2014, at 2).   That is, the plaintiff believed that the putative class included copyright owners whose compositions arrived at the Retailer Defendants from the labels on Exhibit B through an aggregator as an intermediary.

At a conference in December 2014 addressing various discovery disputes (the "December Conference"), I agreed with the defendants' interpretation, stating:

> I read the class definition as the defendants do but I don't know that that's the end of the story.   I think that that leaves the plaintiff[] with the option of moving to amend the class definition to perhaps include the words ["]directly or indirectly,["] [and] that's frankly a motion likely to be granted.   At the same time, I would suggest to the plaintiff[] that you may want to be careful what you wish for because expanding the class definition as you now suggest may lead to issues with respect to ascertainability once we get to the class certification stage.   That obviously will be a determination for Judge Carter . . . .   [But] the defendants should be aware that if the plaintiff[] make[s] that motion, as I say, it's likely to be granted.

(Transcript dated Dec. 15, 2014 ("Tr.") at 13).   I limited the discovery available to the plaintiff based on this understanding of

the operative complaint's class definition.  (Order dated Dec. 15, 2014, at 1).

The plaintiff now moves again to amend his complaint.  He describes three "significant" changes, two directed to the class definition and one directed to the damages claimed.  (Plaintiff's Memorandum of Law in Support of Motion for Leave to File Third Amended Complaint ("Pl. Memo.") at 1-2).

The Proposed Third Amended Complaint (hereinafter, "Proposed Complaint" or "Proposed 3rd Am. Compl.") purportedly "limits the class by eliminating eleven [] record companies" identified in Exhibits A and B to the Second Amended Complaint and by excluding owners of works registered after December 31, 1997 (so that all included works will be governed by the Copyright Act of 1909 rather than the Copyright Act of 1976); in addition, it "provides more detailed allegations . . . concerning the identity of the aggregators that the Retailer Defendants have contracted with to obtain [] infringing musical works . . . and [of] 104 specific record label names used to market these infringing works for sale in the Retailer Defendants' online music stores."  (Pl. Memo. at 1).  The proposed class thus comprises

the legal and/or beneficial owners of all or part of at least one musical composition registered with the U.S. Copyright Office prior to January 1, 1998[,] and embodied on a phonorecord that was reproduced, distributed, sold, imported, or exported by at least one of the Retailer

> Defendants during the Class Period and that was supplied
> to the Retailer Defendant, directly or through one or
> more intermediaries, by one of the aggregators listed on
> the Aggregator-Label List annexed as Exhibit A on behalf
> of a corresponding label listed on Exhibit A.

(3rd Am. Compl., attached as Exh. 1 to Declaration of Matthew F. Schwartz dated Feb. 9, 2015, ¶ 160).  The Aggregator/Label List pairs 104 record labels -- all of which, according to the plaintiff, "were [] either listed on Exhibits A and B to the Second Amended Complaint or were label names used by those record companies to market and distribute the music they sell"[2] -- with one (or, occasionally, more) of the aggregators through which those labels make allegedly infringing recordings available to the Retailer Defendants.[3]  (Pl. Memo. at 5; Aggregator/Label List,

---

[2] A record label may use different names to release certain recordings.  These are known as "imprints," and are described as "what the label chooses to call itself for the purposes of [a particular] recording."  (Deposition of Jason Pascal dated January 10, 2014, attached as Exh. 14 to Declaration of Matthew F. Schwartz dated March 20, 2015 ("2nd Schwartz Decl."), at 89-90.

[3] Actually, there are 101 unique label (or imprint) identifiers, as Magnitude Records is listed twice because it is paired with aggregators Routenote (misspelled as "Routnote") and Believe, and AP Music is listed three times because it is paired with aggregators Believe, INgrooves, and Orchard.  (Aggregator/Label List).  There are nine aggregators included on the Aggregator/Label List -- Rants, Routenote (or Routnote), Second Wind, INgrooves, Believe, Adasam, Empire, Orchard (or Orchard (IRIS)), and eOne -- although the plaintiff asserts in his papers that there are only eight.  (Plaintiff's Reply Memorandum of Law in Support of Motion for Leave to File Third Amended Complaint ("Reply") at 15).  Of these, only Orchard is a named defendant here.

attached as Exh. A to Proposed 3rd Am. Compl.).  That is, the works-in-suit consist of only the recordings provided to one or more of the Retailer Defendants by a listed label through the aggregator(s) it is linked with on the Aggregator/Label List.  The plaintiff has further made clear that the inclusion of the phrase "indirectly through one or more intermediaries" is only "intended to encompass aggregators that have a direct contractual relationship with a defendant but use third party technology providers to deliver the content."  (Reply at 16; Proposed 3rd Am. Compl., ¶ 111).

The Proposed Complaint also "streamline[s] the damages inquiry by fixing the damages award as the minimum statutory damages of $750 per infringement available under the Copyright Act."  (Pl. Memo. at 2).

Discussion

Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give" leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Aetna Casualty & Surety Co. v. Aniero Concrete Co., 404 F.3d 566, 603-04 (2d Cir. 2005).  "This permissive standard is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (internal

quotation marks omitted).  Motions to amend should therefore be denied only for good reasons, including undue delay, bad faith or dilatory motive, undue prejudice to the non-moving party, or futility.  See Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman, 371 U.S. at 182); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  The party opposing amendment has the burden of establishing that amendment would be futile or otherwise inappropriate.  Allison v. Clos-ette Too, L.L.C., No. 14 Civ. 1618, 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015); Ferring B.V. v. Allergan, Inc., 4 F. Supp. 3d 612, 618 (S.D.N.Y. 2014); Charney v. Zimbalist, No. 07 Civ. 6272, 2014 WL 963734, at *1 (S.D.N.Y. March 12, 2014).  The court has broad discretion over motions to amend.  See McCarthy, 482 F.3d at 200.

The defendants attempt to cover all the bases, arguing that leave to amend should be denied because the plaintiff has acted in bad faith and unduly delayed the amendment; because the amendment would unduly prejudice the defendants; and because amendment would be futile.

A.  Bad Faith

The defendants assert that Mr. Blagman has acted in bad faith by including false allegations, amending for tactical advantage, and proposing self-serving amendments at the expense of the

interests of other class members. (Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint ("Def. Memo.") at 6).

1.   <u>Knowingly False Allegations</u>

The defendants claim that evidence they have produced belies the plaintiff's allegation that the identified labels "have all failed to obtain mechanical licenses or any authorization" for the content they supply. (Def. Memo. at 6; Proposed 3rd Am. Compl., ¶ 121). Specifically, they proffer (1) a declaration stating that Google, Inc., has produced spreadsheets that evidence thousands of digital phonorecord delivery licenses that were obtained for record labels included on the Aggregator/Label List; and (2) the declaration of Michael Bennett, who owns several labels on the Aggregator/Label List, which "states that mechanical licenses have been obtained by INgrooves in connection with Bennett tracks that are sold in U.S. online music stores." (Def. Memo. at 6-7; Declaration of A. John P. Mancini dated March 6, 2015 ("Mancini Decl."), ¶ 6).

The cases defendants cite establish that courts have denied leave to amend where the plaintiff makes allegations that are contrary to facts of which he has personal knowledge or are verifiably false. <u>See, e.g.</u>, <u>Lans v. Digital Equipment Corp.</u>, 252 F.3d 1320, 1328-29 (Fed. Cir. 2001) (affirming district court's

denial of leave to amend where original complaint falsely alleged plaintiff owned patent); In re GPC Biotech AG Securities Litigation, No. 07 Civ. 06728, 2009 WL 5125130, at *4 (S.D.N.Y. Dec. 29, 2009) (denying leave to amend where allegations made in original complaint could be proved false by publicly-available transcript of government committee); Billy Baxter, Inc. v. Coca-Cola Co., 47 F.R.D. 345, 349-50 (S.D.N.Y. 1969) (denying leave to amend where plaintiff's own answers to interrogatories established that allegations in complaint were false). That is not the situation here. Rather, the defendants argue that some of the plaintiff's allegations are proposed in bad faith because certain facts purportedly within the defendants' knowledge contradict those allegations. This is not the proper stage of the litigation to make such a determination.

Moreover, the "facts" provided by the defendants are largely unsupported. They consist of, first, an assertion by defendants' counsel that a spreadsheet, not provided to the Court, "evidences" licenses, with no explanation of how the spreadsheet was created, what it was based on, or how it proves the existence of such licenses. (Mancini Decl., ¶ 6). Second, and more disquieting, the defendants contend that Mr. Bennett's declaration somehow disproves the plaintiff's allegations by establishing that tracks provided to the Retailer Defendants by the Bennett labels through one

particular aggregator were licensed.   However, Mr. Bennett's declaration says no such thing:

> I personally am not familiar with the specific "mechanical" rights clearance requirements associated with the distribution in the United States of sound recordings and the compositions embodied therein.   In connection with any such U.S. distribution, we typically relied on our distributors to obtain whatever mechanical licenses and other authorizations may be necessary to reproduce, distribute and sell these songs in the US.   To my knowledge, neither I nor any of the labels described [] took any direct action to obtain mechanical licenses to duplicate or distribute any of the musical compositions embodied in the recordings of these catalogues.   I have no personal knowledge of whether Second Wind or Rants obtained the necessary licenses or authorizations.   I was advised by a representative of INgrooves that it obtained the mechanical licenses and authorizations required to sell my labels' tracks in U.S. online music stores, but I have no personal knowledge of this.

(Declaration of Michael Bennett dated Feb. 1, 2015, attached as Exh. D to Mancini Decl., ¶ 8 (emphasis added); Mancini Decl., ¶ 5). This does not come close to showing bad faith.

   2.   Tactical Advantage

The defendants argue that, by removing certain labels from the Proposed Complaint -- particularly Zoom Karaoke -- Mr. Blagman "is attempting to gerrymander the boundaries of his class to avoid unfavorable discovery regarding previously-identified labels." (Def. Memo. at 8).   That is, having reproached the plaintiff for including purportedly false allegations in the Proposed Complaint, the defendants now chide him for removing allegations that he

learned were faulty through discovery.

As the plaintiff makes clear, he had reason to believe until well after the Second Amended Complaint was filed that Zoom Karaoke provided tracks to the Retailer Defendants without the proper licenses. (2nd Schwartz Decl., ¶¶ 4-12). For example, although a February 18, 2014 deposition notice served on RightsFlow, a licensing service owned by Google, requested copies of such licenses, none were provided. (2nd Schwartz Decl., ¶ 6). Indeed, it was not until November 7, 2014, when Google provided the plaintiff with the aforementioned spreadsheet "evidencing" licenses that any indication of Zoom Karaoke licenses came to light.[4] (2nd Schwartz Decl., ¶ 11).

Defendants again cite inapposite cases for support. (Def. Memo. at 8-9). The plaintiff has not added "many new factual allegations, several of which seem to be inconsistent with allegations in the earlier two complaints." Reisner v. General Motors Corp., 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981). Rather, he has excised allegations undermined by discovery. He has not

---

[4] To be sure, it is curious that Mr. Blagman discounts the spreadsheet as evidence of some licenses but appears to credit it as evidence of Zoom Karaoke licenses. However, perhaps the evidence of Zoom Karaoke licenses is particularly strong. In any case, it is the defendants' burden to show bad faith, see e.g., Charney, 2014 WL 963734, at *1, and the defendants fail even to mention this inconsistency in their papers.

attempted to add a new theory of recovery and explain his delay by asserting that he was unaware of a decade-old statute.  See Sanders v. Thrall Car Manufacturing Co., 582 F. Supp. 945, 952-53 (S.D.N.Y. 1983).  Nor has he sought to amend the complaint to add allegations or claims of which he should have been aware since the outset of the case.  See Richardson Greenshields Securities Inc. v. Mui-Hin Lau, 113 F.R.D. 608, 611 (S.D.N.Y. 1986).

### 3.   Interests of Other Class Members

Finally, the defendants contend that, by requesting only $750 per infringement in statutory damages, the plaintiff has impaired the interests of potential class members.  (Def. Memo. at 9).  There appear to be two, perhaps contradictory, branches to this argument.  On one hand, the defendants assert that the proposed "self-serving" amendment has "profound" and impliedly pernicious "implications for absent class members" (Def. Memo. at 9) because it would make the class uncertifiable by creating a conflict between Mr. Blagman and the absent class members that renders him an inadequate class representative (Def. Memo. at 23-25).  On the other hand, the defendants accuse Mr. Blagman of proposing the amendment to "avoid[] an inevitable denial of class certification." (Def. Memo. at 9).  Neither argument has merit.

As to the first, courts have held that pursuit of statutory damages on behalf of putative class members does not impair those

members' rights.  See, e.g., Saucedo v. NW Management and Realty Services, Inv., 290 F.R.D. 671, 683 (E.D. Wash. 2013) ("Plaintiffs' decision to pursue statutory damages rather than actual damages on their class claims does not create a conflict.  To the extent that some putative class members would prefer to pursue actual damages rather than statutory damages, they may simply opt out of the class."); Miller-Huggins v. Mario's Butcher Shop, Inc., No 09C-3774, 2010 WL 658863, at *4 (N.D. Ill. Feb. 22, 2010) (rejecting claim that class representative's claim for statutory rather than actual damages rendered her inadequate to represent interests of class); see also Authors Guild v. Google, Inc., 282 F.R.D. 384, 395 (S.D.N.Y. 2012) (certifying class where representative plaintiff sought only statutory damages), vacated on other grounds 721 F.3d 132 (2d Cir. 2013).

Nor have the defendants shown that the proposed amendment is merely a strategy to avoid denial of an (as-yet-unfiled) motion for class certification.  To be sure, "[a] finding that a party is seeking leave to amend solely to gain a tactical advantage . . . supports a finding that such an amendment is made in bad faith." Franco v. Diaz, __ F. Supp. 3d __, __, 2014 WL 4494470, at *6 (E.D.N.Y. 2014) (alterations in original) (internal quotation marks omitted).  Thus, leave to amend has been denied where the motion was filed "quite literally on the eve of the defendant's motion to

dismiss, a fact that in the context of [the] litigation makes it clear that plaintiff was motivated by a desire to forestall defendant's motion to dismiss," Prince v. Suffolk County Department of Health Services, Nos. 89 Civ. 7243, 89 Civ. 8085, 1995 WL 144782, at *7 (S.D.N.Y. April 3, 1995); or where the motion was filed after summary judgment briefing had been completed and the court had "indicated that it had concerns about" the plaintiff's claim, Trans Video Electronics, Ltd. v. Sony Electronics, Inc., 278 F.R.D. 505, 507 (N.D. Cal. 2011).  No such gamesmanship is evident here, where class discovery is not yet closed and any motion for class certification is still months away from being filed. (Order dated Feb. 18, 2015, at 2).

    B.   <u>Delay</u>

    The defendants point out that this application comes "more than two and a half years after the case was filed" and eight months after the Second Amended Complaint was filed. (Def. Memo. at 11).  They acknowledge that I invited amendment at the December Conference, but assert that the only amendment anticipated was inclusion of "the words 'directly or indirectly' in the class definition," and not "the vast overhaul of Exhibit A, limitation of absent class members' remedies, and other changes that [the] [p]laintiff now proposes." (Def. Memo. at 11).

    I will deal with the second point first.  Obviously, the

16

substance of the amendment does not affect the length of delay involved, and thus is not a relevant factor at this step of the analysis.  Certainly, the unexpectedness of an amendment can be taken into account in determining whether to grant a motion to amend, but that is more logically a concern in the prejudice analysis.  In any case, there is no undue surprise here.  It has been clear since December 2014 that, if Mr. Blagman sought to amend the class definition, the proposed amendment would somewhat expand the class from the definition in the Second Amended Complaint by including owners of works indirectly supplied to the Retailer Defendants.  And, indeed, the modification embodied in the Aggregator/Label List (along with the limitation regarding third party technology providers) appears calculated to address my concerns about potential issues with the ascertainability of a class whose works could have been provided to the Retailer Defendants through any number of aggregators and any number of other intermediaries.  (Tr. at 13).  This is not, then, an unexpected and wildly different class definition.  Moreover, it was proposed fewer than two months after the December conference, with the lag attributable to the plaintiff's attempt to avoid motion practice by conferring with the defendants regarding the proposed amendment. (Pl. Memo. at 8).  As noted above, discovery is ongoing and the class certification motion is not due until September 2015.

Finally, as I recognized in connection with the plaintiff's motion to file the Second Amended Complaint, the length of time at play here -- two-and-one-half years after the filing of the original complaint in a complex putative class action -- is not completely out of bounds.   Blaqman II, 2014 WL 2106489, at *3 (citing Commander Oil Corp. v. Barlo Equipment Corp., 215 F.3d 321, 333 (2d Cir. 2000), Rachman Bag Co. v. Liberty Mutual Insurance Co., 46 F.3d 230, 235 (2d Cir. 1995), Block v. First Blood Associates, 988 F.2d 344, 350-51 (2d Cir. 1993), and Margel v. E.G.L. Gem Lab Ltd., No. 04 Civ. 1514, 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010)). That said, the discovery deadline approaches, and if any further attempts to amend are made, I will scrutinize the delay and its potential effects with a gimlet eye.

C.   Undue Prejudice

The defendants claim that the amendment will require substantial new discovery in connection with "new" labels included in the Aggregator/Label List and will destroy the value of completed investigation into labels that appeared in the Second Amended Complaint but have been dropped from the Aggregator/Label List.   (Def. Memo. at 12-13).

The moving party bears the burden "of demonstrating that substantial prejudice would result were the proposed amendment to be granted."   Oneida Indian Nation of New York State v. County of

18

Oneida, 199 F.R.D. 61, 77 (N.D.N.Y. 2000) (internal quotation marks omitted); see also ResQNet.com v. Lansa, Inc., 382 F. Supp. 2d 424, 449 (S.D.N.Y. 2005), rev'd on other grounds, 594 F.3d 860 (Fed. Cir. 2010).  While prejudice may arise when a proposed amendment opens the door to substantial expenditures of time and money, see Monahan v. New York City Department of Corrections, 214 F.3d 275, 284 (2d Cir. 2000), "[a]llegations that an amendment will require the expenditure of additional time, effort, or money do not [themselves] constitute undue prejudice," A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (internal quotation marks omitted).  Thus, an "'adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.'" JPMorgan Chase Bank, N.A. v. IDW Group, LLC, No. 08 Civ. 9116, 2009 WL 1357946, at *4 (S.D.N.Y. May 12, 2009) (quoting United States v. Continental Illinois National Bank & Trust Co. of Chicago, 889 F.2d 1248, 1255 (2d Cir. 1989)); see also Margel, 2010 WL 445192, at *12 (noting that "[t]he prejudice that would flow from any additional required discovery can generally be mitigated by adjustments to the discovery schedule," and collecting cases).  Whether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to this determination.  See Monahan, 214 F.3d at 284.

19

Unlike the Second Amended Complaint, which, I observed, added allegations regarding certain "new methods of infringement," Blaqman II, 2014 WL 2106489, at *4, the Proposed Complaint does not. Rather, it assertedly limits the class by dropping certain labels from its allegations and, according to the plaintiff, focuses the class by explicitly pairing the included labels with the aggregator who supplies the works to the Retailer Defendants. The defendants, however, assert that the Proposed Complaint "adds at least 46 new record labels."[5]  (Def. Memo. at 4 & n.1).

The defendants concerns are overblown.  The plaintiff asserts that each of the labels on the Aggregator/Label List is an imprint or variation of a label or imprint noted in the Second Amended Complaint.  (Reply at 10; Second Schwartz Decl., ¶¶ 17-18 & Exh. 5).  To the extent that the defendants contend the inclusion of these imprints constitutes unfair surprise, I find such an argument difficult to credit when the Retailer Defendants have contractual arrangements with the aggregators, such as defendant Orchard, to

---

[5] The defendants sought leave to file a sur-reply, arguing that the plaintiff, in responding to this assertion, would attempt to re-litigate the question of the Second Amended Complaint's class definition, which was addressed and decided at the December Conference. (Letter of A. John P. Mancini dated March 17, 2015, at 1).  But that ruling is not at issue here and the plaintiff's arguments do not attempt to undermine it.  The relevant question is whether the Proposed Complaint would, if accepted, prejudice the defendants.

provide the content at issue to be sold in their online stores. The "essence of the plaintiff's claim" has not changed and the defendants have not identified any way in which they "would be confronted with some unique difficulty" in their defense. Blagman II, 2014 WL 2106489, at *4 (internal quotation marks omitted). Rather, they claim that they "will have to build their defense to class certification anew." (Def. Memo. at 13). That is hardly a cognizable hardship where class discovery is ongoing, class certification motion practice is not imminent, and much of the defendants' prior discovery is still relevant. Under these circumstances, and given Rule 15(a)'s liberal standard, the defendants have not shown undue prejudice.

D.   Futility

Leave to amend may be denied as futile when the proposed pleading would not survive a motion to dismiss. See AEP Energy Services Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010); Slay v. Target Corp., No. 11 Civ. 2704, 2011 WL 3278918, at *2 (S.D.N.Y. July 20, 2011) ("Futility generally turns on whether the proposed amended pleading states a viable claim."); Penn Group, LLC v. Slater, No. 07 Civ. 729, 2007 WL 2020099, at *4 (S.D.N.Y. June 13, 2007) (collecting cases). Under this standard, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims.'"   Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (alteration in original) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).   The opposing party must establish futility of amendment.   Allison, 2015 WL 136102, at *2; Ferring B.V., 4 F. Supp. 3d at 618.

### 1. Failure to Identify Works-In-Suit

The defendants argue that Rule 8 of the Federal Rules of Civil Procedure requires the plaintiff to "identify all works-in-suit, including those compositions owned by absent class members." (Def. Memo. at 16).   Because Mr. Blagman specifically identifies only a few works that he himself owns, the defendants contend that the Proposed Complaint is futile as to the proposed class. (Def. Memo. at 17-18).

When he denied the defendants' motion to dismiss the plaintiff's first amended complaint, Judge Carter noted that "not being able to specify the original works is to be expected for class allegations." Blagman I, 2013 WL 2181709, at *6. Suggesting that he accepted the plaintiff's failure to identify specific works merely because of "the posture of the case at that time -- prior to any opportunity by [the] [p]laintiff to take discovery" -- the defendants invite me to revisit this finding. (Def. Memo. at 15).

I decline to do so.   Judge Carter has already addressed this issue and found that the plaintiff was not required to name all the

works at issue in this putative class action.  Nothing in his
opinion indicates that he was relaxing the pleading requirements of
Rule 8 based on the procedural posture of the case.  Rather, his
observation that the plaintiff had not had the opportunity to
engage in discovery merely recognized that the expected class
certification motion will likely include "'more information than
the complaint itself affords.'"  Blagman I, 2013 WL 2181709, at *7
(quoting Myers v. MedQuist, Inc., No. 05-4608, 2006 WL 3751210, at
*4-5 (D.N.J. 2006)).

The defendants also make an argument tailored specifically to
the Proposed Complaint: the class definition, which identifies the
relevant works as digital recordings supplied to the Retailer
Defendants "directly or through one or more intermediaries, by one
of the aggregators listed on . . . [the Aggregator-Label List] on
behalf of a corresponding label" on that list, "is so ambiguous and
uncertain as to all but preclude the identification of the works-
in-suit."  (Def. Memo. at 18).  This is so because, according to
the defendants, (1) content providers need not identify all
intermediaries in the distribution chain of a digital recording
(and may not know that information); (2) content providers need not
provide label information, which, in any case is "arbitrary,"
"free-form" text, unverified by the Retailer Defendants; and (3)
content providers who include label information may not be acting

23

"on behalf of" that label in providing the recordings to the Retailer Defendants.  (Def. Memo. at 19-20).

In considering a motion for leave to amend, "the court must 'accept as true all of the proposed complaint's factual allegations, and draw all reasonable inferences in favor of plaintiff.'"  Allison, 2015 WL 136102, at *2 (quoting Henneberry v. Sumitomo Corp. of America, 415 F. Supp. 2d 423, 433 (S.D.N.Y.2006)).  Nothing in the Proposed Complaint indicates that the relevant works will be impossible to identify.  Moreover, even if I were to look beyond the four corners of the Proposed Complaint, this argument would fail.

The defendants argument regarding the first point rests on their understanding that, although a prior version of the Proposed Complaint "explained that the inclusion of 'intermediaries' was intended to encompass aggregators that have a direct contractual relationship with a defendant but use third party technology providers to deliver the content," such "language is no longer included" in the Proposed Complaint, so that the "proposed class definition encompasses content that is provided to [the] [d]efendants directly or indirectly by anyone on behalf of the aggregator/label combinations" appended to the complaint.  (Def. Memo. at 19).  The plaintiff points out that the language the defendants refer to is, indeed, included in the Proposed Complaint,

as is the limitation to aggregators with a direct contractual relationship with a defendant but who use third party technology providers to deliver the content. (Third Amended Class Action Complaint and Demand for Jury Trial, attached as Exh. B to Mancini Decl., ¶ 60 n.1; Proposed 3rd Am. Compl., ¶ 111; Reply at 16).

The defendants do not meet their burden to show that their objection regarding label information renders the amendment futile. The plaintiff has presented evidence that such information is available and usable. He has assertedly produced "thousands of pages" showing the relevant labels' catalogues in the Retailer Defendants' online stores. (Second Schwartz Decl., ¶ 18 & Exh. 28). And the defendants have stipulated that they can identify the catalogues of works available in the Retailer Defendants' online stores either "on a content-provider basis," which would also "include record label names, to the extent that the content provider included that information," or on a "label-by-label" basis. (Stipulation dated Oct. 23, 2014, attached as Exh. E to Mancini Decl., ¶ 9; Stipulation dated July 22, 2014, attached as Exh. F to Mancini Decl., ¶ 2; Stipulation dated June 21, 2014, attached as Exh. G to Mancini Decl., ¶ 3; Stipulation dated June 24, 2014, attached as Exh. H to Mancini Decl., ¶ 3; Stipulation dated June 21, 2014, attached as Exh. I to Mancini Decl., ¶ 3; Stipulation dated June 21, 2014, attached as Exh. J to Mancini

Decl., ¶ 3).

Finally, the defendants' contention that it will be impossible to determine whether a content provider is working "on behalf of" a label without "conducting discovery into the agreements . . . between the content provider and the relevant label" (Def. Memo. at 20), is undeveloped and appears somewhat sophistic.  The Proposed Complaint is not concerned with the legal relationship between the aggregators and the labels; the pairings on the Aggregator/Label List are merely the path by which the works were provided to the retailers.  The defendants have not shown that identification of these works is "all but preclude[d]."  (Def. Memo. at 18).

    2.  <u>Standing</u>

The defendants argue, for the fourth time, that some members of the proposed class suffered no injury, and therefore lack standing, because licenses were obtained for their works.  (Def. Memo. at 21-22; Defendants' Memorandum of Law in Support of their Motion for Reconsideration of their Motion to Dismiss the Class Claim Based on Lack of Standing at 5-12; Defendants' Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint at 13-15; Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's First Amended Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6) at 17-19).  Judge Carter first rejected this argument in May 2013, <u>Blaqman I</u>, 2013 WL

2181709, at *5-6, rejected it again in January 2014 (Order dated Jan. 21, 2014), and I rejected it in May 2014, Blagman II, 2014 WL 2106489, at *6.  I reject it again here.  As in Blagman II, the class proposed here is narrower than the one Judge Carter addressed in Blagman I.  Indeed, it is not different from the proposed class in Blagman II in any way that is relevant to standing.  Thus, there is no reason to "disturb Judge Carter's previous determination" on the issue.  Blagman II, 2014 WL 2106489, at *6.

### 3. Class Certification

As noted in Blagman II, inquiry into class action requirements on a motion to amend filed prior to a certification motion "is limited."  2014 WL 2106489, at *6 (internal quotation marks omitted).  Leave to amend should be denied for futility "only where 'the proposed amendment would, on its face, violate class action requirements.'"  Id. at *6 (quoting Feldman v. Lifton, 64 F.R.D. 539, 543 (S.D.N.Y. 1974)).  The defendants contend that the complaint itself shows that the class is not certifiable because its absent members are not ascertainable and because the proposed class fails the commonality and predominance requirements of Rule 23 of the Federal Rules of Civil Procedure.[6]

---

[6] The defendants also argue that Mr. Blagman is an inadequate class representative because he has elected to pursue only statutory damages.  I have already addressed (and rejected) this notion above.  They also present an underdeveloped argument based

As to ascertainability, the defendants argue that, because identifying the relevant works is impossible, it is also impossible to ascertain the identities of class members. (Def. Memo. at 22). But, as discussed above, the defendants have not shown that identification of the relevant works is "impossible," so this argument fails.

The defendants also contend that, even if the works-in-suit can be identified, ascertaining members of the proposed class will require "several fact-intensive, individualized inquiries," including identifying copyright registrations and copyright owners. (Def. Memo. at 22). They made this same argument when they opposed the filing of the Second Amended Complaint. See Blagman II, 2014 WL 2106489, at *8. I observed then that, because "the ascertainability requirement is designed only to prevent the certification of a class whose membership is truly indeterminable," it is best to address it in connection with a class certification motion. Id. at *9 (internal quotation marks omitted). The

_____

on the "typicality" requirement in a three-sentence footnote lifted almost verbatim from their opposition to the plaintiff's motion for leave to file the Second Amended Complaint. (Def. Memo. at 25 n.20; Defendants' Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint at 16 n.12). I deem the argument waived because insufficiently presented. See DeAngelis v. Corzine, Nos. 11 Civ. 7866, 12 MD 2338, 2015 WL 585628, at *9 (S.D.N.Y. Feb. 9, 2015) (internal citation omitted). Relatedly, if I were to address it, I would find that it does not come close to meeting the defendants' burden of showing futility.

defendants recognize this, but point out that at the December Conference I warned the plaintiff that amending the class definition as then proposed could lead to problems of ascertainability. (Def. Memo. at 23). That does not inspire me to revisit my former determination. The plaintiff has not proposed the hypothetical amendment discussed in the December Conference, which would only have added the words "directly or indirectly" to the class definition. (Tr. at 13). Instead, along with that addition, he has linked each included label with its aggregator and limited the universe of other intermediaries, thus somewhat ameliorating the expected weakness -- although I do not express an opinion on whether the class members are, ultimately, ascertainable. That should be clear from other remarks at the December Conference, where I indicated that an ascertainability problem would not require denial of an expected motion to amend, but that Judge Carter would address it on a motion for class certification. (Tr. at 13).

Finally, the defendants assert that the class is too dissimilar to meet the commonality and predominance requirements of Rule 23 because the different modes of alleged infringement -- failure to license, pirating, unauthorized importation and exportation, and defective compulsory license notices -- "will require different factual and legal determinations." (Def. Memo.

29

at 25).  Again, I rejected this same argument in <u>Blagman II</u>,

reasoning:

> Mr. Blagman's individual claims are based on the same
> underlying legal theory as the proposed class and arise
> from the same course of conduct, which is the alleged
> systemic failure of the defendants to ensure that the
> songs sold in their online music stores were
> appropriately licensed.  It is likely that there will be
> some variation in how and whether infringement occurred,
> but as long as a sufficient constellation of common
> issues binds class members together, variations in the
> sources and application of a defense will not
> automatically foreclose class certification under Rule
> 23(b)(3).  Mr. Blagman also asserts that there will be
> common determinations of liability, at least on a
> label-wide basis.  Given the limited inquiry to be
> undertaken at this stage, and the possibility that
> theories of liability may be limited at the certification
> stage to only those capable of classwide proof, there is
> a reasonable likelihood of certification.  Although the
> defendants have highlighted serious issues that may
> indeed capsize the plaintiff's class allegations, these
> arguments are more appropriately weighed in the context
> of a class certification motion.

2014 WL 2106489, at *8 (internal citations and quotation marks

omitted).  The defendants have suggested no reason to depart from

that analysis this time around.

<u>Conclusion</u>

For these reasons, the plaintiff's motion for leave to file a

third amended complaint (Docket no. 168) is granted.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

30

Dated:     New York, New York
           April 20, 2015

Copies transmitted this date to:

Matthew T. Schwartz, Esq.
Brian S. Levenson, Esq.
Schwartz & Ponterio, PLLC
134 W. 29th St.
New York, NY 10128

Jason L. Solotaroff, Esq.
Oren Giskan, Esq.
Giskan, Solotaroff & Anderson, LLP
11 Broadway
Suite 2150
New York, NY 10004

Michael J. Boni, Esq.
John E. Sindoni, Esq.
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004

Kenneth L. Steinthal, Esq.
Joseph R. Wetzel, Jr., Esq.
King & Spalding LLP
101 2nd St., Suite 2300
San Francisco, CA 94105

A. John P. Mancini, Esq.
Alison L. Stillman, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019

Gabrielle Levin, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 48th Floor
New York, NY 10166-0193

Gail E. Lees, Esq.
Scott A. Edelman, Esq.
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197